Merrimack
No. 85-519

THE STATE OF NEW HAMPSHIRE

v.

GUY WHEELER

December 5, 1986

*Stephen E. Merrill*, attorney general (*Andrew W. Serell*, attorney, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. The defendant appeals his conviction by jury in the Superior Court (*DiClerico*, J.) on charges of burglary. The defend-

ant presents the following questions concerning whether the trial court erred: (1) in allowing the defendant's witness to invoke her privilege against self-incrimination, and (2) in allowing introduction of evidence of the testing of the defendant's boots which were seized when he was arrested on an unrelated charge. We find no error and affirm.

On the morning of April 11, 1984, an employee of Merrill's Radiator in Concord reported to work and discovered that the building had been broken into. The Concord police investigated the break-in and determined that entry had been forced in the rear of the building, where the garage door and another inside door had been kicked in. The police officers found a yellow card with a bootprint on it near the inside door. The officers observed that this print was very similar to a bootprint which had been discovered outside the building near the point of entry.

Once inside, the burglar had forced open a safe, and $75 to $80 was missing, as was a pry bar from a tool box which had been opened. The building had been found to be secure at 12:30 a.m. on April 11, when a police officer had done a perimeter check of the building. Thus, the time of the break-in was narrowed to between 12:30 a.m. and 7:30 a.m., the time the burglary was discovered.

Later the same day, the defendant was arrested at his Concord home on a capias warrant issued for failure to appear in court on an unrelated charge. When the defendant was brought to the police station an inventory search was conducted, and personal items, including his boots, were taken from him. Officer Magoon, who had been at the burglary scene earlier, examined the defendant's boots and believed they matched the bootprints which had been found at the site of the burglary. The boots were turned over to another officer to be secured as evidence. The following day, the police sought and obtained a search warrant in order to have the boots sized and tested at the State police laboratory.

The defense called one witness at trial, who invoked her privilege against self-incrimination. The defendant was convicted and sentenced to 3 1/2 to 7 years in the State prison, and now appeals that conviction.

We first address whether the trial court erred in allowing the defendant's witness to invoke her privilege against self-incrimination. *See* N.H. CONST. pt. I, art. 15, U.S. CONST. amend. V. The defendant made an offer of proof to the trial court and now asserts that this witness would have provided an alibi for him during the crucial time in which it was determined that the burglary had occurred.

The witness was first asked this question by defense counsel, outside the presence of the jury: "Between the hours of 10:00 p.m. on

April 10, 1984 and 1:15 p.m. on April 11, 1984, did Guy Wheeler visit your house?" Upon advice of counsel, she refused to answer this question. The trial court allowed defense counsel to narrow the question as follows: "[W]as Guy Wheeler present at . . . 33 Fayette Street between 12:30 a.m. on April 10 (sic), 1984 and 7:30 a.m. April 10 (sic), 1984?" The witness, after consultation with counsel, again refused to answer based on her constitutional privilege. Finally, she refused to answer the question: "Was Guy Wheeler a member of your household in April of 1984?"

It is clear to us, from a thorough review of the record, that the trial court carefully considered the circumstances of the witness, questioned her legal counsel concerning the matters about which she was asked to testify, and determined that her answers might possibly incriminate her. *See State v. Lavallee*, 119 N.H. 207, 210, 400 A.2d 480, 482 (1979). Among these circumstances was the fact that the witness was a welfare recipient who could have been charged with an offense for receiving certain benefits if another potential wage earner was a member of her household.

■ The defendant argues that the trial court should have granted his request to have the trial court examine the witness *in camera*, and that the trial court did not adequately question her concerning her claim that her answers to the above questions could be incriminating. We disagree. The trial court clearly was not required to question the witness *in camera*. In fact, in outlining the reasons for not pursuing such questioning, the trial court stated the following:

> "to do that would in effect do away with the protection which the Fifth Amendment affords a witness . . . the Court cannot require this witness fully to explain how she might be incriminated by the answer which is the truth and which would incriminate her if given to the Court. If a witness were compelled to answer, then in effect the protection which is granted by the Fifth Amendment [and part I, article 15 of the New Hampshire Constitution] would be entirely destroyed."

We agree with the trial court's decision and analysis.

■ In *State v. Lavallee supra*, we stated that when there is a conflict between a witness's right to remain silent and a defendant's right to present the most compelling case, "the court must engage in a delicate balancing of these conflicting interests," and the burden is on the defendant to prove that the court's decision is improper or

prejudicial to the defendant's case. *Id.* at 210, 400 A.2d at 482. In the case at bar the trial court specifically stated:

". . . under the circumstances of the case and in light of the [fact] that the witness has narrowed down a claim of privilege to the very time frame which is involved in this indictment and its bill of particulars, the Court is of the opinion that she is exercising her right in good faith, that this is not a mere pretext on her part to avoid answering questions, and the Court will allow her to stand on her Fifth Amendment privilege."

■ In *Hoffman v. United States*, 341 U.S. 479 (1951), the United States Supreme Court stated that to allow a witness to invoke the privilege against self-incrimination, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486–87. We have reviewed the record in the case at bar and find that it is not "'*perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken [in invoking the privilege], and that the answer[s] *cannot possibly* have such tendency' to incriminate." *Id.* at 488 (citations omitted) (emphasis in original). We are satisfied that the trial court followed the standard set out by the Supreme Court and, hence, we find that the trial court did not err in allowing the witness in this case to invoke her privilege against self-incrimination.

The second issue which the defendant presents for our review is whether the trial court erred in allowing evidence to come before the jury concerning the defendant's boots, which were seized by the police at the time the defendant was arrested and detained on unrelated charges. The defendant asserts that the police needed probable cause to keep the boots and to have them analyzed, and that no independent justification was present in this case to do so.

The defendant concedes that the police lawfully seized his boots when he was arrested and brought to the police station on the unrelated charge. *See State v. Levesque*, 123 N.H. 52, 455 A.2d 1045 (1983); *Illinois v. Lafayette*, 462 U.S. 640 (1983). The defendant argues, however, that in order to keep the boots and to perform the laboratory tests that were required to match them up with the bootprint at the burglary scene, the police needed probable cause to do so. We disagree.

■ In addressing this issue, we look to cases decided under the State, and decided under the Federal, Constitutions. N.H. CONST. pt.

I, art. 19; U.S. CONST. amend. IV. We have previously held that there need be no independent justification for retaining articles seized from an individual who was lawfully arrested for some crime unrelated to the articles seized. *State v. Farnsworth*, 126 N.H. 656, 662, 497 A.2d 835, 838 (1985); *see also State v. Cimino*, 126 N.H. 570, 575, 493 A.2d 1197, 1201 (1985).

After the police examined the boots taken from the defendant at the police station and noted their similarity to the bootprint found at the burglary scene, they sought and obtained a search warrant in order to have the boots examined at the State police laboratory. Through this examination, the police were able to establish a link between the defendant and the burglary at Merrill's Radiator. The State's expert testified that, through the tests of the boots and the impression left on the yellow card, he was "a hundred percent certain" that the left boot of the defendant caused the impression on the card.

 Contrary to the defendant's assertions, our State Constitution does not require that the police show independent probable cause to retain and examine evidence seized during a search incident to a lawful arrest. "There is abundant case law that upon arrest the police may search an arrested individual for valuables, weapons, instruments of escape, and evidence of crime. A search of like scope is permissible at the time a defendant, like this one, is committed to jail following arrest." *State v. Cimino, supra* at 574, 493 A.2d at 1201 (citations omitted). "[A]rticles removed from an arrested individual, which have no connection with the crime for which the individual was arrested, may be searched without an independent constitutional justification." *State v. Farnsworth, supra* at 662, 497 A.2d at 838. Since, therefore, the police had lawful possession of the property, article 19 requires neither further demonstration of probable cause nor the issuance of further legal process to authorize the examination or testing of such property. In this case, we conclude that the retention and examination of the defendant's boots was permissible under the New Hampshire Constitution, part I, article 19. We do not address the defendant's federal constitutional claim because the Federal Constitution affords him no greater protection than does the State Constitution. *See United States v. Edwards*, 415 U.S. 800 (1973). *Cf. State v. DeGrenier*, 128 N.H. 547, 517 A.2d 814 (1986). Accordingly, we affirm the decision of the trial court.

*Affirmed.*

All concurred.