ESTATE OF Lee B. FISHER, Deceased, John J. Carney, Executor, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 792, 1088, Dockets 89–4124, 89–4126.

United States Court of Appeals, Second Circuit.

Argued Feb. 12, 1990.

Decided June 6, 1990.

John P. Pieri, Buffalo, N.Y. (John W. Condon, Condon & Pieri, Buffalo, N.Y., of counsel), for petitioner.

Calvin C. Curtis, Washington, D.C. (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, David I. Pincus, Tax Div., Dept. of Justice, Washington, D.C., of counsel), for respondent.

Before CARDAMONE and WINTER, Circuit Judges and KEENAN, District Judge *.

CARDAMONE, Circuit Judge:

A taxpayer petitioning to set aside income tax deficiencies and penalties for fraud responded to the Commissioner of Internal Revenue's request for discovery by asserting, in part, a Fifth Amendment privilege against self-incrimination. The question before us is whether the taxpayer's request for *in camera* review of his claimed privilege before responding to discovery was properly denied by the tax court, which then proceeded to sanction petitioner for his failure to comply with the court's discovery order by dismissing his petition.

The Estate of Lee B. Fisher appeals from a judgment and order of the United States Tax Court (Shields, J.), entered August 11, 1989, dismissing its petition for a redetermination of a claimed deficiency in income taxes and ordering it to pay the deficiency as well as an addition to the taxes due for fraud. For the reasons that follow we reverse and remand.

## FACTUAL BACKGROUND

The appeal concerns two cases consolidated in the United States Tax Court that involved Fisher's tax liability for the taxable years 1975, 1976 and 1977. The first case arose in March 1984 when the Commissioner of Internal Revenue (Commissioner) assessed a tax deficiency and a fraud penalty against taxpayer for the taxable year 1977 in the amounts of $33,192.04 and $16,596.02, respectively.

Fisher petitioned the United States Tax Court for a re-determination of this assessment and later amended his petition arguing that the three year statute of limitations set forth in § 6501(a) of the Internal Revenue Code (I.R.C.) had expired. The Commissioner filed an answer contending that the three-year statute of limitations did not apply in the case of a fraudulent return, I.R.C. § 6501(a), or alternatively that a six-year limitation period applied because Fisher had failed to report an excess of 25 percent of his gross income, I.R.C. § 6501(e)(1)(A). In his reply, Fisher admitted some of the allegations but declined to respond to others on Fifth Amendment grounds. Similarly, when the Commissioner sought discovery Fisher responded to some of the discovery demands, but invoked his Fifth Amendment privilege against self-incrimination with respect to the remainder.

Thereafter, counsel for the Commissioner sent a letter to Fisher's counsel requesting documents and additional information, and stating that the Assistant Chief of the Internal Revenue Service's (IRS) Criminal Investigation Division had advised him that no investigation of Fisher was being conducted by the Criminal Investigation Division at that time. The informal and formal discovery requests were only partially answered by Fisher, who refused to provide documents and to respond to most of the interrogatories on Fifth Amendment grounds.

The second tax case is similar to the one just recited. In April 1985 the Commissioner issued a notice of deficiency for the taxable years 1975 and 1976, determining that Fisher owed $191,069.65 in taxes for 1975 and $62,595.13 for 1976. Additionally, the Commissioner, as in the first case, believed that Fisher intentionally underreported his income, and therefore assessed fraud penalties of $95,534.83 for 1975 and $31,297.57 for 1976. Fisher had at this time already been tried and acquitted in the United States District Court for the Western District of New York on criminal tax evasion for the tax years 1975 and 1976.

The taxpayer filed a petition in the tax court for a re-determination of the deficiencies and fraud penalties. In response to the answer interposed by the Commissioner, taxpayer admitted many of the facts set forth on previously filed income tax returns, but to all the other allegations he

---

* Hon. John F. Keenan, United States District Court for the Southern District of New York, sitting by designation.

claimed a Fifth Amendment privilege. After unsuccessfully seeking informal discovery the Commissioner served Fisher with interrogatories, a request for admissions, and a request for the production of documents. Of the 263 requests for admissions, taxpayer admitted 180, denied six, indicated that he did not have sufficient information to respond to nine, and declined on Fifth Amendment grounds to respond to 68.

In June 1986 the tax court consolidated petitioner's two cases. Shortly thereafter, the Commissioner filed a motion to compel Fisher to respond to the discovery requests. Attached to the motion was an affidavit from the Chief of the Buffalo Internal Revenue Service's Criminal Investigation Division confirming that Fisher was not currently under criminal investigation by the IRS. On August 21, 1986 after reviewing Fisher's claims of a Fifth Amendment privilege, the tax court ordered him to respond to the discovery requests. Fisher thereupon served supplemental responses to the requests but persisted in his Fifth Amendment claim with respect to several requests.

On September 15, 1986 the taxpayer filed a motion for a protective order permitting him to continue to rely upon his Fifth Amendment privilege, noting that he had admitted most of the allegations in the Commissioner's requests for admissions and had cooperated in stipulating which documents could be used by the Commissioner at trial. In the motion, Fisher requested an *in camera* conference in order to substantiate his claim of privilege by setting forth what he believed were self-incrimination problems that concerned non-tax crimes.

On the same day, the Commissioner filed a supplemental motion asking the tax court to impose sanctions for Fisher's failure to respond to discovery requests, including a request that the case be dismissed pursuant to Tax Court Rule 104(c)(3). In March 1988 taxpayer died. Two months later counsel's motion to substitute Fisher's estate for the decedent was granted. On July 18, 1989 the tax court entered a default judgment against the taxpayer's estate dismissing taxpayer's petitions because of its failure to comply with the August 21, 1986 discovery order. In its dismissal order, the court held that "Fisher did not have ... reasonable cause to apprehend danger of a criminal prosecution and therefore he did not have a valid Fifth Amendment claim." It relied on two factors to support its conclusion: (1) double jeopardy would prevent a retrial of Fisher for tax evasion; and (2) the IRS had repeatedly informed Fisher during his lifetime that he was not being criminally investigated.

## DISCUSSION

### A.

■ The Fifth Amendment to the United States Constitution provides in relevant part that "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V. The privilege against self-incrimination "reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty." *Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). The guarantee must be broadly construed to serve the right it was designed to protect, *Arndstein v. McCarthy*, 254 U.S. 71, 72–73, 41 S.Ct. 26, 26–27, 65 L.Ed. 138 (1920); *Counselman v. Hitchcock*, 142 U.S. 547, 562, 12 S.Ct. 195, 197, 35 L.Ed. 1110 (1892), and is entitled to be asserted in any civil, criminal or administrative proceeding, *Kastigar*, 406 U.S. at 441, 92 S.Ct. at 1653. It may properly be invoked whenever a witness reasonably believes that his testimony could "furnish a link in the chain of evidence needed to prosecute" him for a crime. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). Ultimately, a "witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself." *Id.* at 486, 71 S.Ct. at 818. It is the court that decides whether a witness' refusal to answer is privileged. "To sustain the privilege, it need only be evident from the impli-

cations of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486–87, 71 S.Ct. at 818.

■ The danger of self-incrimination must be real, not remote or speculative. *Zicarelli v. New Jersey State Comm'n of Investigation*, 406 U.S. 472, 478, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 234 (1972). When the danger is not readily apparent from the implications of the question asked or the circumstances surrounding the inquiry, the burden of establishing its existence rests on the person claiming the privilege. *See United States v. Fox*, 721 F.2d 32, 40 (2d Cir.1983); *In re Morganroth*, 718 F.2d 161, 167 (6th Cir.1983); *United States v. Field*, 532 F.2d 404 (5th Cir.), *cert. denied*, 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976).

### B.

■ Although Fisher refused on Fifth Amendment grounds to respond to the majority of the discovery questions posed, he did not make an impermissible blanket claim of Constitutional privilege. *United States v. Malnik*, 489 F.2d 682, 686 (5th Cir.), *cert. denied*, 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974) (judges cannot speculate "that any response to all possible questions would or would not tend to incriminate the witness."). Here the taxpayer invoked the privilege in response to specific questions. Consequently, "[a]s to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of ... [in]crimination." *Rogers v. United States*, 340 U.S. 367, 374, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951). In its dismissal order of July 18, 1989 the tax court relied on the two noted factors in order to support its determination that Fisher did not have a valid Fifth Amendment claim, that the IRS had said he was not being criminally investigated, and the bar of double jeopardy.

■ Reliance on statements made by the IRS's Criminal Investigation Division as to its current enforcement policies respecting taxpayer are misplaced. In *United States v. Edgerton*, 734 F.2d 913 (2d Cir.1984), we rejected this approach—that focused on the government's intention to prosecute—in favor of one that looks only to whether answering the question would tend to incriminate the witness. *Id.* at 921. In *Edgerton* we held that a witness need not go beyond the threshold showing of potential incrimination—and be required to prove that the government will prosecute him—in order to be entitled to the privilege. *Id. See United States v. Jones*, 703 F.2d 473, 477–78 (10th Cir.1983); *see also United States v. Miranti*, 253 F.2d 135, 139 (2d Cir.1958) (the assertion of the privilege does not depend upon the trial court's assessment of the likelihood of prosecution). The claimant of the privilege may be forced to answer only when his fear of incrimination is unfounded.

Although the tax court concluded that Fisher did not have reasonable cause to apprehend danger of a criminal prosecution, it is plain from the trial court's opinion that it did not come to this view after making a particularized determination as to whether each of Fisher's claims of privilege could provide "a link in the chain of evidence" necessary to prosecute him for a crime. Instead it relied upon the Criminal Investigation Division's assurances that Fisher was not currently being investigated. Such reliance was in error. Even assuming that the tax court's order directing Fisher to give complete and full answers to the Commissioner's interrogatories and requests for admissions did reflect the court's reasoned determination that no responsive answer to the Commissioner's requests was likely to incriminate Fisher, reliance on the Criminal Investigation Division's representation was still error. As noted, the Supreme Court has long recognized that the real danger of self-incrimination may exist even when it is not readily apparent from the implications of the questions asked or the circumstances surrounding the inquiry. *Hoffman*, 341 U.S. at 486, 71 S.Ct. at 818. In such case a witness has

the burden of establishing the existence of the danger of self-incrimination, but the witness is not "required to prove the hazard [of self-incrimination] in the sense in which a claim is usually required to be established in court." *Id.* at 486–87, 71 S.Ct. at 818. That is, the claimant must show a reasonable possibility that his own testimony will incriminate him, not establish it by a preponderance of the evidence.

In the instant matter such a reasonable possibility was evidenced in the record before the tax court. Following that court's August 1986 discovery order, Fisher moved pursuant to Rule 103 of the Tax Court's Rules of Practice and Procedure, 26 U.S.C. foll. § 7453, on September 15, 1986 for a protective order permitting him to persist in his refusal to respond to various interrogatories and requests for admissions. Fisher stated that the IRS had refused to initiate proceedings to confer use immunity upon him. He also requested that if his Fifth Amendment privilege could not otherwise be sustained that he be granted an *in camera ex parte* conference before the tax court judge in order to substantiate his assertion of privilege. In the nearly three years that passed between Fisher's motion and the dismissal of his case, the judge never acknowledged the taxpayer's request for such a conference, nor was his request discussed in the tax court's decision dismissing taxpayer's petition.

 The Commissioner now contends that taxpayer's Fifth Amendment claim, however valid it may have been during his lifetime, was mooted upon his death. We agree that Fisher's Estate cannot assert what was personal privilege, *see United States v. Ayers*, 615 F.2d 658, 660 (5th Cir.1980), but the issue is not moot. The tax court ruled that Fisher had no valid Fifth Amendment privilege in September 1986 when he was still alive and predicated its sanction of dismissing his petition on that possibly erroneous conclusion.

 In the absence of a grant of use immunity, taxpayer should have been afforded an opportunity to explain his claim of constitutional privilege. The burden of establishing the danger of self-incrimina-

tion is clearly insurmountable unless the witness called upon to testify has an opportunity to be heard on his claim of privilege. Not giving Fisher this opportunity was clearly at odds with the constitutional command that the privilege against self-incrimination be liberally construed. *See generally Arndstein*, 254 U.S. at 72–73, 41 S.Ct. at 26–27; *Counselman*, 142 U.S. at 562, 12 S.Ct. at 197. When the incriminatory potential of a discovery request is not clear on its face, an *in camera* conference is consonant with the notion that a witness need not surrender "the very protection that the privilege is designed to guarantee" in order to invoke it. *Hoffman*, 341 U.S. at 486, 71 S.Ct. at 818.

Such an *in camera* conference is not without precedent. The Supreme Court has repeatedly looked with favor upon the practice of *in camera* review of various privileges against disclosure. *See United States v. Zolin*, —— U.S. ——, 109 S.Ct. 2619, 2629, 105 L.Ed.2d 469 (1989) (*in camera* review of applicability of crime-fraud exception to attorney-client privilege); *Kerr v. United States District Court*, 426 U.S. 394, 406, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976) (suggesting that *in camera* review is a "highly appropriate and useful means of dealing with claims of governmental privilege"); *United States v. Nixon*, 418 U.S. 683, 706, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974) (*in camera* review of documents sought by special prosecutor appropriate in light of claim of presidential privilege); *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953) (court must determine whether circumstances are appropriate for claim of privilege against revealing military secrets).

Admittedly, government claims of privilege, and the attorney-client privilege, stand on a somewhat different footing than the claims of an individual taxpayer seeking to avoid self-incrimination. Given the practical difficulties faced by a witness directed to comply with a discovery order— who believes that he would be turning over incriminatory information to agents of the government—judicial intervention is not only necessary but also clearly appropriate.

Although the decision whether to engage in *in camera* review rests in the sound discretion of the district court, *see Zolin*, 109 S.Ct. at 2631, the court must ensure that a witness' right against self-incrimination is adequately protected, whether by *in camera* review or by grant of use immunity. *See United States v. Gravatt*, 868 F.2d 585, 590–91 (3d Cir.1989).

### C.

■ Although the tax court erred in its refusal to allow Fisher to substantiate his claims of privilege, this alone does not require a reversal of the judgment dismissing taxpayer's suit. In its final order, the tax court also relied on double jeopardy as a bar to Fisher's reprosecution on tax evasion charges. Such an absolute bar to subsequent prosecution may be dispositive in ascertaining the permissible scope of a claim of Fifth Amendment privilege. *See Kastigar*, 406 U.S. at 449, 92 S.Ct. at 1658 (the use of privilege inappropriate following a grant of immunity); *In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 872 (7th Cir.1979) (absolute bar such as statute of limitations, immunity or double jeopardy may dispose of claim of privilege). Thus, if double jeopardy would have prevented Fisher from being prosecuted, his claim of privilege may have been unwarranted, and the dismissal of his suit proper.

Although the tax court's conclusion that taxpayer's acquittal on criminal tax evasion charges for the tax years 1975 and 1976 would have barred on double jeopardy grounds his re-trial on tax charges for those years, it does not offer a complete disposition of his claims of privilege. The record suggests that the IRS had been investigating Fisher's returns for tax years 1975 through 1986. If the information requested of Fisher produced a "chain of incriminating evidence" that implicated him for tax evasion in any year other than 1975 or 1976 double jeopardy would not have been a bar to prosecution. Further, with respect to the re-determination of his deficiency liability for tax years 1975 and 1976, Fisher was considerably more cooperative and responded to some 195 of 263 requests for admissions. Thus, when prosecution was in fact barred by double jeopardy Fisher made at least a colorable attempt at compliance with the tax court's directive.

Moreover, since he was denied an opportunity to explain his use of privilege, it is difficult to determine whether the crimes for which Fisher sought not to incriminate himself were in fact tax related. His motion for a protective order raises incrimination problems concerning what appears to be at least some non-tax related crimes. Fisher's previous trial and acquittal would not preclude his claim of a Fifth Amendment privilege as to non-tax related crimes. That is, it is entirely within the realm of possibility that the demanded disclosures could provide a starting point from which criminal conduct—not barred by double jeopardy or the statute of limitations— could be traced. Our jurisprudence's quality is measured in a given case by how much process is due. Where the substantive right being asserted is a constitutional privilege, the test is whether the trial court gives the claim the full benefit of all process available or instead gives it short shrift. In taking the latter course, by failing to grant *in camera* review of the taxpayer's claim of constitutional privilege, the tax court abused its discretion.

### CONCLUSION

In sum, a number of factors lead us to reverse the tax court's judgment. First, in concluding that Fisher's assertion of privilege was unwarranted it failed to make the necessary particularized inquiry as to whether each of Fisher's claims of privilege could provide evidence that would tend to incriminate him. Second, it improperly relied upon the IRS's assurances that the taxpayer was not currently being investigated. Third, the tax court failed to consider incrimination issues with respect to possible non-tax related crimes calling for *in camera* review of these claims. Fourth, given that Fisher was tried for tax fraud for only two of the 11 years for which he had been investigated, double jeopardy

grounds may or may not serve as a bar to re-prosecution.

For the reasons stated, the judgment appealed from is reversed, taxpayer's petition is reinstated, and the case is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.