Hillsborough-northern judicial district
No. 92-541

## KEY BANK OF MAINE

v.

## JOHN H. LATSHAW, SR.

## KEY BANK OF MAINE

v.

## JOHN H. LATSHAW, SR. AND MURIEL LATSHAW

November 10, 1993

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Robert E. Murphy, Jr.* on the brief and orally), for the plaintiff.

*Sanders and McDermott*, of Hampton (*Lawrence M. Edelman* and *Lawrence S. Forsley* on the brief, and *Mr. Forsley* orally), for the defendants.

JOHNSON, J.   These two cases, consolidated on appeal by the defendants, involve the efforts of the plaintiff, Key Bank of Maine (bank), to collect a judgment of nearly three million dollars from defendant John H. Latshaw, Sr. In one case, Mr. Latshaw challenges the Superior Court's (*Barry*, J.) order requiring him to make periodic payments to the bank of $10,000 per month, arguing that the court heard no evidence to support it. The trial court's fact-finding mission was hampered by Mr. Latshaw's extensive invocation of the privilege against self-incrimination. We reverse the court's periodic payment order and remand for a new hearing.

In the other case, which stems from the bank's petition to set aside an allegedly fraudulent transfer, Mr. Latshaw and his wife, Muriel Latshaw, contest the Superior Court's (*Barry*, J.) order compelling them to answer deposition questions regarding their past and present financial conditions. The Latshaws justify their silence on the grounds that answering would violate both their privilege against self-incrimination and Mr. Latshaw's marital privilege. We affirm the court's order with respect to Mr. Latshaw's invocation of the marital privilege, and affirm in part and reverse in part with respect to the Latshaws' invocation of the privilege against self-incrimination.

In 1985, Mr. Latshaw guaranteed a promissory note held by the bank and signed by a third party. In June 1990, during negotiations to extend the note, Mr. Latshaw filed a personal financial statement with the bank indicating a net worth of over nine million dollars. Listed as one of his assets was his home at 128 Lille Road in Nashua. Three months later, the bank extended the promissory note. Then on October 4, 1990, Mr. Latshaw quitclaimed his interest in the Nashua home to Mrs. Latshaw. The promissory note was further extended in December 1990 and thereafter went into default.

The bank obtained judgment against Mr. Latshaw for the value of the note and, after its initial collection efforts proved fruitless, moved for an order requiring him to make periodic payments. At a deposition, and later at a hearing on the motion, Mr. Latshaw refused to provide any information concerning his financial condition, invoking his State and federal privileges against self-incrimination. The court made no findings concerning Mr. Latshaw's assets, but ordered him to pay the bank $10,000 per month. Upon denying Mr. Latshaw's motion for reconsideration, the court explained that "[t]he only information before this Court with regard to the defendant's financial condition is his alleged net worth in excess of Twelve Million Dollars." Mr. Latshaw appealed.

Meanwhile, in a separate action against both Latshaws, the bank had petitioned the superior court to set aside as fraudulent Mr. Latshaw's transfer of the Nashua home to his wife, alleging that Mr. Latshaw was insolvent at the time of transfer. The bank deposed Mrs. Latshaw, but she also invoked her State and federal privileges against self-incrimination. In addition, Mr. Latshaw claimed the marital privilege to prevent Mrs. Latshaw from testifying. The bank then moved to compel the Latshaws to answer its deposition questions, and the court granted the motion with respect to most of the questions posed. The Latshaws appealed.

As a preliminary matter, the Latshaws argue that the superior court erroneously ordered Mr. Latshaw, instead of just Mrs. Latshaw, to answer the questions. The Latshaws assert that the bank deposed Mr. Latshaw in the suit against him on the promissory note, but not in the action to set aside the transfer. This issue, however, does not appear in the Latshaws' notice of appeal. We therefore do not consider it. *See Appeal of Toczko*, 136 N.H. 480, 487, 618 A.2d 800, 804–05 (1992).

We first address whether the superior court's order compelling the Latshaws to answer certain deposition questions violated their State and federal privileges against self-incrimination. A portion of the questions reads as follows. Mr. Latshaw was asked:

1. "Who owns that property [where you live at 128 Lille Road], sir?"

2. "Do you have an interest in Juniper Associates Realty Trust?"

3. "Are you connected in any way with Juniper Associates Realty Trust?"

4. "Did you have any ownership interest in Servomation at the time that you left?"

5. "What is 'Security Deposit?'"

6. "Does some entity entitled 'Security Deposit' have a mortgage interest in the Fairfield Gardens?"

7. "Does 'Security Deposit' have a mortgage interest in the Madison Apartments?"

8. "Is the John H. Latshaw 1982 Irrevocable Trust still in existence?"

9. "What are the amounts of the loans against the insurance policies that are within the John H. Latshaw 1982 Irrevocable Trust?"

10. "What is your interest in the Muriel L. Latshaw 1987 Irrevocable Insurance Trust?"

11. "What is your interest in the Muriel L. Latshaw 1987 Irrevocable Trust #2?"

12. "Let me show you a document that's been marked Exhibit No. 10 [1989 Federal Income Tax Return for Mr. and Mrs. Latshaw], and ask you if you can identify that?"

The bank also asked Mr. Latshaw about his interest in several real estate properties and whether certain entities held mortgages on these properties.

Mrs. Latshaw was compelled to answer these questions:

1. "Did you receive any income under any trusts or beneficial interests since 1988?"

2. "Can you tell me whether you have any other sources of income or sources of money available to you from 1988 through the present?"

3. "Have you seen Exhibit 1 [quit claim deed] before?"

4. "At any time from October 4, 1990 through today, have you been made aware, through any source other than your husband, that your husband executed a quit claim deed transferring all of his interest in 128 Lille Road to you?"

5. "Do you know who is the title owner of the property at 128 Lille Road in Nashua today?"

6. "Do you have any beneficial interest in the Seacoast Realty Trust?"

7. "Do you have any beneficial interest in the Hampton Inn?"

8. "Since October 4, 1990, have you given any money or property or anything of value to your husband?"

■■ We address the Latshaws' State constitutional claim first. *See State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983). Part I, article 15 of the New Hampshire Constitution provides that "[n]o subject shall . . . be compelled to accuse or furnish evidence against himself." For a witness to invoke this privilege, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure might result." *State v. Wheeler*, 128 N.H. 767, 771, 519 A.2d 289, 291 (1986) (quotation omitted). The privilege "extends not only to answers that in themselves would support a conviction, but

also to any information sought which would furnish a link in the chain of evidence needed to prosecute." *State v. O'Connell,* 131 N.H. 92, 94, 550 A.2d 747, 748 (1988). We must keep in mind, however, that "whether a witness' claim of the privilege is justified is a decision which rests within the trial court's exercise of sound discretion." *Id.* at 94, 550 A.2d at 749.

The crime the Latshaws cite in support of their claim of possible self-incrimination is the federal crime of bank fraud. *See* 18 U.S.C.A. § 1014 (Supp. 1993). This crime includes making a false statement to a bank upon an application for a loan or extension thereof. *Id.* The Latshaws point out that the October 4, 1990, transfer of Mr. Latshaw's interest in the Nashua home to Mrs. Latshaw occurred just three and one-half months after Mr. Latshaw filed his June 1990 financial statement with the bank, indicating a net worth of over nine million dollars. Accordingly, the Latshaws assert, if the bank were able to prove its allegation that Mr. Latshaw was insolvent in early October 1990, this would furnish a link in the chain of evidence needed to prosecute Mr. Latshaw under 18 U.S.C.A. § 1014. We agree. Although one large investment in a real estate development venture that proves to be ill-advised could turn a millionaire into a pauper within a matter of several months, we recognize the unlikelihood of a person losing that much money in such a short period of time. Insolvency in early October would furnish a link in the chain of evidence needed to prosecute Mr. Latshaw for overstating his wealth on his June 1990 financial statement.

With this in mind, we examine the questions posed to the Latshaws, looking first at those asked of Mr. Latshaw. Although almost all of them are worded in the present tense, the bank states that they relate to any point in the past, as well as the present. The bank's claims below, however, required only proof of Mr. Latshaw's financial condition on the date of the periodic payment hearing (July 20, 1992) and his condition on October 4, 1990. We therefore restrict our analysis to those two points in time.

■ As explained above, assuming the bank's allegations of insolvency to be true, we think answers to questions about Mr. Latshaw's October 4, 1990, financial condition could possibly tend to incriminate him. Thus, insofar as the bank's questions related to this point in time, we hold that the superior court abused its discretion in compelling Mr. Latshaw to answer them. It could not have been *"perfectly clear,* from a careful consideration of all the circumstances in the case," that the compelled answers *"cannot possibly"* have a ten-

dency to incriminate Mr. Latshaw. *Wheeler*, 128 N.H. at 771, 519 A.2d at 291 (quotation omitted).

■ As for the questions' application to Mr. Latshaw's financial condition on the date of the periodic payment hearing, we note that the questions were asked in August 1991, one year and two months after the filing of the June 1990 financial statement. The Latshaws argue that this time span is irrelevant because Mr. Latshaw's financial condition at one point in time is necessarily related to his condition at any other point. Although this is true in the literal sense, it is also true that as the time increases between any two factual conditions, the connection between them becomes weaker and weaker. Each passing day provides fresh opportunities for a New Hampshire business person to lose money, such that a discovery that Mr. Latshaw is now insolvent would no longer tend to prove that he was also insolvent in June 1990. We have reached the point where evidence of Mr. Latshaw's present insolvency would not furnish a link in the chain of evidence needed to prosecute him for lying on his June 1990 financial statement. Therefore, we affirm the superior court order insofar as the questions to Mr. Latshaw relate to his present financial condition.

■ The one question asked of Mr. Latshaw that is not covered by our analysis above is number twelve, in which Mr. Latshaw is asked to identify what is purported to be the Latshaws' 1989 federal income tax return. We find that an answer to this question could possibly tend to incriminate Mr. Latshaw. If the tax return is accurate, it likely contains extensive information about Mr. Latshaw's financial condition just months before he filed his statement with the bank. We therefore find that the causal connection between the 1989 tax return and the June 1990 financial statement is strong enough that an answer to the bank's question might furnish a link in the chain of evidence necessary to prosecute Mr. Latshaw. *Cf. Andresen v. Maryland*, 427 U.S. 463, 473–74 (1976) ("the Fifth Amendment may protect an individual from complying with a subpoena for the production of his personal records in his possession because the very act of production may constitute a compulsory authentication of incriminating information").

■ We now consider the questions the court directed Mrs. Latshaw to answer for possible violations of her privilege against self-incrimination. We reject Mrs. Latshaw's claim of privilege as to all of the questions because they do not in any way tend to incrimi-

nate *her* of federal bank fraud. It was Mr. Latshaw, after all, who filed the June 1990 financial statement, not Mrs. Latshaw. None of the questions imply that Mrs. Latshaw made any statements to a bank on an application for a loan. *See* 18 U.S.C.A. § 1014. As the federal privilege against self-incrimination provides the Latshaws no more protection than the State privilege, *cf. Hoffman v. United States*, 341 U.S. 479 (1951), we conduct no separate federal analysis of these issues.

■ We turn now to the Latshaws' second objection to the superior court's order compelling answers to the deposition questions, that compelling answers from Mrs. Latshaw would violate Mr. Latshaw's marital privilege. The privilege provides:

> "Husband and wife are competent witnesses for or against each other in all cases, civil and criminal, except that unless otherwise specifically provided, neither shall be allowed to testify against the other as to any statement, conversation, letter or other communication made to the other or to another person, nor shall either be allowed in any case to testify as to any matter which in the opinion of the court would lead to a violation of marital confidence."

N.H. R. Ev. 504; *see* RSA 516:27. A court must find "a violation of marital confidence" before it can exclude a spouse's testimony. *State v. Wilkinson*, 136 N.H. 170, 177–78, 612 A.2d 926, 930 (1992). To find a violation, the communication at issue "must be something confided by one to the other, simply and specially as husband or wife, and not what would be communicated to any other person under the same circumstances." *Clements v. Marston*, 52 N.H. 31, 38 (1872). "Communications or transactions between husband and wife with respect to purely business matters are usually held not privileged, on the ground that these are not marital confidences." 97 C.J.S. *Witnesses* § 269d, at 772 (1957) (footnote omitted); *see also State v. Curtis*, 334 S.W.2d 757, 763 (Mo. Ct. App. 1960); *Johnson v. Johnson*, 25 A.D.2d 672, 673, 268 N.Y.S.2d 403, 406 (1966); 1 McCormick on Evidence § 80, at 300 (J.W. Strong gen. ed., 4th ed. 1992).

■ We find that the questions asked of Mrs. Latshaw can be answered without breaking any marital confidences. Any marital communications revealed by answering the questions would relate to "purely business matters" and thus are not privileged. For example, several questions relate to Mr. Latshaw's transfer of his interest in

the couple's Nashua home to Mrs. Latshaw. Others ask her whether she has any interest in certain properties. "It was certainly competent for [Mrs. Latshaw] to state that [she] was the owner of the property, and to state how [she] became possessed of it." *German American Ins. Co. v. Paul*, 2 Indian Terr. 625, 630, 53 S.W. 442, 443 (1899). Especially in an action to set aside an allegedly fraudulent conveyance, one spouse cannot use the marital privilege to prevent disclosure of the transactions at issue. *See Wiley v. McBride*, 74 Ark. 34, 37, 85 S.W. 84, 85 (1905); *Tobias v. Adams*, 201 Cal. 689, 699, 258 P. 588, 592 (1927). We conclude that the superior court did not abuse its discretion by rejecting Mr. Latshaw's claim of marital privilege with regard to the questions asked of Mrs. Latshaw enumerated above.

Finally, we consider whether the superior court properly ordered Mr. Latshaw to pay the bank $10,000 per month in satisfaction of the nearly three million dollar judgment the bank had obtained against him. Mr. Latshaw contends that the court abused its discretion under RSA 524:6-a (Supp. 1992), the periodic payment statute, as well as the Superior Court Rules, because neither party presented the court with any evidence of Mr. Latshaw's financial condition at the time of the periodic payment hearing. Mr. Latshaw, it should be remembered, refused to provide such evidence, claiming the privilege against self-incrimination. As noted above, neither the State nor the Federal Constitution justifies Mr. Latshaw's refusal to answer questions about his then current financial condition, and we therefore reject at the outset the Latshaws' contention that the court's order penalized him for invoking his constitutional privilege.

RSA 524:6-a states:

"Whenever judgment is rendered against any person in this state, the court in which said judgment is rendered shall either at the time of rendition of the judgment inquire of the defendant as to his ability to pay the judgment in full or upon petition of the plaintiff after judgment order the defendant to appear in court for such inquiry and, at either time, order the defendant to make such periodic payments *as the court in its discretion deems appropriate.* . . . The court may order probation officers or another appropriate agency to make an investigation and recommendation as to the defendant's ability to pay said judgment."

(Emphasis added.) *See Sheedy v. Merrimack Cty. Super. Ct.*, 128 N.H. 51, 55–56, 509 A.2d 144, 147 (1986). The Superior Court Rules provide, in part:

> "A judgment creditor seeking an order for weekly payments under RSA 524:6-a must file a petition with the Clerk setting out specific grounds for relief. . . .
>
> Upon the filing of such a petition, an order of notice will issue *requiring the judgment debtor to appear at a time and date named therein and submit to an examination relative to his property and ability to pay said judgment.*
>
> . . . .
>
> On hearing, *the judgment debtor will submit an affidavit similar to one required under Rule 158* and will be examined under oath as to his property and ability to pay. . . .
>
> If the debtor fails to appear at the hearing, the Court may proceed and orders may be made in his absence.
>
> . . . [I]f the creditor fails to appear at the hearing, the petition will be dismissed.
>
> . . . If the debtor is able to make weekly payments on the judgment, the Court may . . . order the debtor to make weekly payments on the judgment from time to time."

Super. Ct. R. Procedures Under RSA 524:6-a (emphasis added).

█ Our review of the Superior Court Rules and RSA 524:6-a persuades us that, absent a valid claim of privilege or the like, Mr. Latshaw had an obligation to disclose all information relevant to the court's determination of his ability to pay. The bank, however, as the moving party, bore the burden of proof. The Superior Court could not order Mr. Latshaw to make periodic payments without hearing some evidence—or an offer of proof—of his current financial condition.

█ In its denial of Mr. Latshaw's motion for reconsideration of the periodic payment order, the court stated, "The only information before this Court with regard to the defendant's financial condition is his alleged net worth in excess of Twelve Million Dollars." We do not know where this figure came from. The court did not cite any evidence or offer of proof to support it, and we can find none in the record provided to us. Except for the bank's allegations of insolvency in October 1990, neither party mentioned any figure in relation to Mr. Latshaw's net worth except 9.66 million dollars, the net worth Mr. Latshaw alleged on his June 1990 financial statement. This figure

was no longer current at the time of the hearing on the bank's motion for periodic payments, as fourteen months had elapsed since the filing date. The bank declares in its brief that "the trial court in this case is aware that Mr. Latshaw has a net worth in excess of 9 million dollars," but this apparent faith in the continuing validity of the June 1990 financial statement is belied by the bank's allegation that Mr. Latshaw was insolvent in October 1990. The bank has provided us with nothing to counter the Latshaws' convincing argument that the superior court's periodic payment order was not based on any evidence or offer of proof of his then current financial condition. We conclude that the court abused its discretion under RSA 524:6-a and remand for a new hearing.

*Affirmed in part; reversed in part; remanded.*

All concurred.