Rockingham
No. 97-136

ANNETTE B. DEMAURO

v.

JOSEPH M. DEMAURO

June 16, 1998

*Tober Law Offices, P.A.*, of Portsmouth (*Stephen L. Tober* on the brief and orally), and *S. James Boumil*, of Lowell, Massachusetts, on the brief, for the plaintiff.

*Sanders & McDermott, P.L.L.C.*, of Hampton (*Lawrence M. Edelman* on the brief and orally), for the defendant.

HORTON, J. The defendant, Joseph M. DeMauro, appeals a decision of the Superior Court (*McHugh*, J.) ruling that he improperly asserted his State and federal privilege against self-incrimination. We reverse and remand.

In February 1994, the plaintiff, Annette B. DeMauro, filed a libel for divorce against the defendant. In the libel she alleged that the

defendant had engaged in a systematic effort to conceal assets accumulated during their marriage by creating and fraudulently using trusts, foundations, sham corporations, offshore accounts, straws and other entities. The plaintiff also filed the required Rule 158 support affidavit. *See* SUPER. CT. R. 158. In March 1994, the plaintiff filed a motion to seal the record in the divorce proceeding on the basis that "[n]umerous allegations of both uncharged and unconvicted criminal behavior and activity . . . will be made within the pleadings."

The defendant contested the divorce and filed a counter-libel, but has never filed a completed Rule 158 affidavit as required, and has refused to answer interrogatories and other requests for admissions concerning, *inter alia*, his employment, financial background, and living expenses. To date, the defendant has not provided any meaningful financial information to assist in determining an equitable property settlement. *See* RSA 458:16-a, II (1992).

The defendant first asserted his privilege against self-incrimination at a hearing in another civil case on September 18, 1995. The trial court noted that the defendant's assertion of privilege at that late date made "clear that [the defendant's] decision not to meaningfully comply with any past Court order regarding the divulging of his financial status and asset picture was made long before he realized he had a Fifth Amendment privilege." The court further noted that the defendant's refusal to comply was "based upon his pure contempt of this court and the judicial process."

On November 4, 1995, plaintiff's counsel provided the defendant a draft copy of a civil complaint to be filed in federal court alleging that the defendant had engaged in racketeering and numerous other unlawful activities, *see* 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1951 (extortionate threats), 1961 (racketeering) (1994), intending to defraud the plaintiff. The plaintiff further alleged that the defendant had established bank accounts in Switzerland, Saudi Arabia, France, Liechtenstein, the United States, and "various and sundry other locations" in the names of "straws, sham trusts, shell companies and phony 'foundations,' all designed to conceal the location, extent, and existence of assets from [the plaintiff] and persons with whom he did business." In January 1996, the defendant first filed a formal pleading asserting a blanket privilege against self-incrimination with respect to requests for admissions of facts and production of documents.

The plaintiff filed a complaint, similar to the draft complaint, in the United States District Court for the District of Massachusetts in May 1996. The complaint alleged a multitude of federal crimes

spanning the twenty-plus years of the marriage, and continuing to the present day. The district court dismissed the suit because the allegations were similar to the pending divorce proceeding. The United States Court of Appeals for the First Circuit subsequently reversed the trial court, reinstated the suit, and permitted the district court to stay the proceedings pending a decision in the divorce case. *DeMauro v. DeMauro*, 115 F.3d 94, 99-100 (1st Cir. 1997).

The Superior Court (*Gray*, J.) held the defendant in contempt and ordered him to make support payments to the plaintiff as provided in an earlier order, and to file a completed Rule 158 financial affidavit. The defendant appealed to this court in February 1996, and we directed the trial court to conduct a hearing pursuant to *Key Bank of Maine v. Latshaw*, 137 N.H. 665, 671, 633 A.2d 952, 956 (1993). *See DeMauro v. DeMauro*, No. 96-096 (N.H. April 19, 1996). In January 1997, the trial court conducted the hearing. To obtain the information sought on the Rule 158 affidavit, plaintiff's counsel posed over one hundred questions. The defendant refused to answer over seventy questions, claiming the privilege against self-incrimination. As his basis for asserting the privilege, the defendant cites the federal civil RICO complaint and claims that his answers to the questions could serve as a link in the chain of evidence necessary to prosecute him for those offenses.

The trial court found that

> the defendant's attempt to broaden any privilege that he might have far beyond the holding in the lead case of *Key Bank of Maine v. Latshaw*, 137 N.H. 665 (1993)[,] is wholly without merit. In the Court's view, *none* of the questions objected to by the defendant invoke any constitutional Fifth Amendment privilege that the defendant has.

The court also found that "the mere making of those allegations [in the civil RICO complaint] does not entitle the defendant to provide no useful information to the plaintiff and the divorce court so as to effectively prevent an equitable divorce from being granted."

The defendant argues on appeal that the trial court erred by: (1) "ruling that state and federal privileges against self-incrimination afforded [the defendant] *no* protection with respect to *any* of the questions posed concerning his financial activities during the last twenty (20) years"; and (2) holding that the defendant "had waived his constitutional privileges against self-incrimination when he made financial disclosures *prior to* receiving notice of the federal 'RICO' Complaint."

We address the defendant's claims first under the State Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), and "[w]here, as in the instant case, the federal law is not more favorable to the defendant, we make no separate federal analysis." *State v. Davis*, 139 N.H. 185, 189, 650 A.2d 1386, 1388 (1994); *see State v. LaFountain*, 138 N.H. 225, 227, 636 A.2d 1028, 1029 (1994).

■ Part I, Article 15 of the New Hampshire Constitution provides that "[n]o subject shall . . . be compelled to accuse or furnish evidence against himself." For a witness to invoke this privilege, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *State v. Wheeler*, 128 N.H. 767, 771, 519 A.2d 289, 291 (1986) (quotation omitted). "The privilege against self-incrimination extends not only to answers that in themselves would support a conviction, but also to any information sought which would furnish a link in the chain of evidence needed to prosecute." *State v. O'Connell*, 131 N.H. 92, 94, 550 A.2d 747, 748 (1988). A party in a civil proceeding may assert the privilege to particular questions if the answer to the question could result in criminal liability. *See Latshaw*, 137 N.H. at 669-70, 633 A.2d at 955. "[W]hether a witness' claim of the privilege is justified is a decision which rests within the trial court's exercise of sound discretion." *O'Connell*, 131 N.H. at 94, 550 A.2d at 749.

■ The fact that the allegations in the divorce libel and the RICO complaint involve civil proceedings, rather than criminal proceedings, does not deprive a person of the privilege against self-incrimination. *Sevigny v. Burns*, 108 N.H. 95, 96-97, 227 A.2d 775, 777 (1967). The RICO allegations invoke federal statutes for which a defendant may incur both civil and criminal liability for the same activities. Although federal prosecution may be unlikely, the test is not whether prosecution will occur, but whether prosecution *could* occur. *See Wyman v. DeGregory*, 100 N.H. 163, 165, 121 A.2d 805, 807 (1956).

At the *Latshaw* hearing in this case, plaintiff's counsel posed over one hundred questions to the defendant. With respect to at least seventy questions, the defendant asserted his rights against self-incrimination. The defendant asserted his privilege with respect to each question, rather than asserting a blanket privilege. *See O'Connell*, 131 N.H. at 94, 550 A.2d at 749; *Estate of Fisher v. C.I.R.*, 905 F.2d 645, 649 (2d Cir. 1990). Colloquies between the judge and

the attorneys during the hearing elucidated the basis and scope of the privilege asserted by the defendant.

The questions to which the defendant asserted his privilege fell into several categories. First, some questions did not implicate even a remote possibility of self-incrimination, even given the broad scope of the alleged criminal and civil wrongdoing asserted in the RICO complaint. These questions included, *inter alia*, "[d]o you own a set of golf clubs," "[d]id you at one time belong to the Abenaqui Golf Club," and "didn't Mr. Jasinski at one time own the Rye Beach property." Although the defendant erroneously asserted his privilege to these questions, the answers would not have provided the plaintiff with any additional information material to determining the size of the marital estate.

Second, the very nature of some questions indicates that the plaintiff has information regarding the scope and location of the defendant's financial dealings. Plaintiff's counsel asked the defendant whether he had a Bell Cell Visa card, a National Bank credit card, an AFT Universal Card, a current account at J.C. Penney, and two accounts at Sears & Roebuck. Plaintiff's counsel then proffered a copy of the defendant's credit report to show that the defendant had accounts with these businesses. The plaintiff's knowledge is further evidenced by an extensive pleading entitled "Notice to Admit Facts." In this pleading she alleged that the defendant paid his personal bills out of a specified account at the Lowell Five Cents Savings Bank. She also alleged that the Klaidonis Foundation of Anwalts Buro, of Vadus, Liechtenstein was established at the request of Joseph M. DeMauro, a beneficiary, and holds record title to the property known as 2595 Ocean Blvd., Rye Beach, N.H. In addition, "Joseph M. DeMauro now or formerly had a bank and/or checking account at the Saudi British Bank in Saudi Arabia . . . [and an] account at Bank Indosuez of Lassane, Switzerland." With respect to these questions, the defendant properly asserted his privilege. Based on the allegations against the defendant, it is evident that the answers to these questions may not only serve as a link in the chain necessary to prosecute, but as direct evidence of the alleged wrongdoing.

Third, some questions sought testimony from the defendant to identify his signature on documents, or to identify and acknowledge that he viewed property tax bills or other documents. For example, the defendant was asked if he had ever seen a tax bill or a utility bill for a Florida property where the defendant resides, or if his signature appeared on a land trust deed. The defendant properly could assert his privilege to these questions because the answers

might also serve as an evidentiary link in the chain necessary to prosecute. The plaintiff essentially requested the defendant to authenticate evidence she already has and seeks to use.

Finally, some questions sought information of the "fishing expedition" variety, including information about additional assets the plaintiff has no present information about. For example, the plaintiff asked the defendant whether he had a checking account in the United States. Plaintiff's counsel never followed this question with any information to indicate that the plaintiff had any specific knowledge on this issue. In light of the allegations contained in the divorce libel and the civil RICO complaint, the defendant may properly assert the privilege. The defendant is not obliged to provide the plaintiff with information concerning assets about which she has no information because any such assets could be a chain in the link, or actual evidence of the defendant's efforts to defraud the plaintiff.

The plaintiff argues that the defendant's assertion of privilege for the period covering the duration of the couple's marriage is inconsistent with our holding in *Latshaw*. Our holding in *Latshaw*, limiting the scope of the privilege to a narrow time frame, relates to the nature of the asserting party's alleged criminal activity. *Latshaw*, 137 N.H. at 671, 633 A.2d at 956. In *Latshaw*, the defendant was accused of having committed one instance of bank fraud on a particular date in June 1990. *Id.* at 667, 633 A.2d at 955. We held that forcing the defendant to disclose his financial status as described in his 1989 tax return "might furnish a link in the chain of evidence necessary to prosecute." *Id.* at 671, 633 A.2d at 956. We rejected the defendant's assertion of privilege with respect to his financial condition in August 1991 because "as the time increases between any two factual conditions, the connection between them becomes weaker and weaker." *Id. Latshaw*'s holding is tied to the causal link between two dates sufficiently far apart that "evidence of . . . present insolvency would not furnish a link in the chain of evidence needed to prosecute him for lying on his June 1990 financial statement." *Id.*

In the divorce libel and in the collateral federal proceedings, the plaintiff alleged that the defendant had committed numerous state and federal offenses over a span of two decades. Based on the nature of the information sought in the divorce proceeding and the scope of the alleged criminal activities, the defendant could reasonably expect that any information he provided regarding his finances and business activities could be a link in the chain necessary to prosecute. *See Hoffman v. United States*, 341 U.S. 479, 488 (1951)

(concluding that witness properly asserted privilege when foreseeable answers would forge links in the chain for federal prosecution); *cf. McPherson v. McPherson*, 732 P.2d 371, 375 (Idaho Ct. App. 1987) (holding that party asserting privilege showed no "reasonable possibility of criminal prosecution").

Here, the broad allegations in the civil RICO complaint spanned several decades and alleged improper financial dealings and a host of federal and state crimes involving most, if not all, of the defendant's personal and marital assets. Thus, nearly any question answered by the defendant related to his financial or business dealings could possibly serve as a link in the chain of evidence, or could tend to incriminate him. "[W]hether a witness' claim of the privilege is justified is a decision which rests within the trial court's exercise of sound discretion." *O'Connell*, 131 N.H. at 94, 550 A.2d at 748; *see Janvrin v. Scammon*, 29 N.H. 280, 290 (1854). Insofar as the plaintiff's questions related to the defendant's financial activities during the time period at issue, we hold that the superior court abused its discretion by requiring the defendant to answer them. It could not have been "perfectly clear, from a careful consideration of all the circumstances in the case," that the compelled answers "cannot possibly" have a tendency to incriminate the defendant. *Wheeler*, 128 N.H. at 771, 519 A.2d at 291 (quotation and emphases omitted). We conclude that the defendant properly asserted his privilege with respect to most questions. With respect to those questions to which the defendant improperly asserted the privilege, we do not see how the answers would be material to determining the equitable distribution of the marital estate.

We next address the defendant's assertion that the trial court erred in rejecting his privilege claim by finding that "[h]is haphazard and unreasonable invocation of any Fifth Amendment privilege to even the simplest questions smacks of nothing but pure obstructionism," and that his invocation of the privilege to virtually all questions related to his income, assets, or business activities amounted to a "blanket" assertion. Alternatively, the trial court found that "to the extent [the defendant] had a valid Fifth Amendment privilege to any information he gave previously, that privilege has been waived" by testifying in proceedings separate and distinct from the divorce.

The plaintiff argues that the defendant's "blanket privilege claims are unreasonable, and, thus, unjustified." The defendant, however, faced a dilemma. He risked being held in contempt by prematurely asserting the privilege at the *Latshaw* hearing; alter-

natively, he risked losing the privilege if he answered certain questions. *Cf. Rogers v. United States,* 340 U.S. 367, 378 (1951) (Black, J., dissenting). The defendant's steadfast refusal to answer even the most elementary questions about his assets and finances persuades us that he did not intentionally relinquish or abandon his privilege against self-incrimination. *Cf. State v. Brodeur,* 126 N.H. 411, 416, 493 A.2d 1134, 1138 (1985) (quotation omitted) (concluding criminal defendant knowingly and intelligently waived his privilege). Although assertion of the privilege may ultimately be improper, a party who asserts the privilege against self-incrimination to individual questions, regardless of the number, is not deemed to have asserted a blanket privilege. *See O'Connell,* 131 N.H. at 94, 550 A.2d at 749.

■ Alternatively, the plaintiff argues that "this [d]efendant has voluntarily made prior sworn disclosures, and as a result has lost his privilege against self-incrimination." The defendant's testimony in any collateral proceeding did not constitute a waiver, however, because "waiver of the privilege is limited to the particular proceeding in which the witness appears." *State v. Roberts,* 136 N.H. 731, 745, 622 A.2d 1225, 1235 (1993) (quotation and brackets omitted); *see* N.H. CONST. pt. I, art. 15.

The defendant's assertion of the privilege did not leave the plaintiff or the trial court with an inaccurate assessment of his assets; it left them with no information to assess his financial status. *See Klein v. Harris,* 667 F.2d 274, 287-88 (2d Cir. 1981); *cf. Rogers,* 340 U.S. at 371 ("To uphold a claim of privilege in this case would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony"). *But cf. McCarthy v. Arndstein,* 262 U.S. 355, 359 ("it makes no difference in the right of a witness to protection from incriminating himself that he has already answered in part, he being entitled to claim the privilege at any stage of the inquiry"), *reh'g granted,* 263 U.S. 676 (1923), *aff'd,* 266 U.S. 34 (1924). The defendant's assertion of his privilege may have concealed information, but it did not "mutilate[] the truth." *Garrelts v. Garrelts,* 300 N.W.2d 454, 456 (Mich. Ct. App. 1980). Although the defendant's assertion frustrated the plaintiff and the trial court, we conclude that the defendant effectively asserted and did not waive his right against self-incrimination.

■ The defendant's assertion of privilege, however, cannot "be used as a means of preventing the orderly [resolution] of civil matters" and deprive the plaintiff of her rights. *State v. Cote,* 95 N.H. 108, 112, 58 A.2d 749, 752 (1948); *see generally* Heidt, *The*

*Conjurer's Circle — The Fifth Amendment Privilege in Civil Cases,*
91 YALE L.J. 1062 (1982); Kaminsky, *Preventing Unfair Use of the
Privilege against Self-Incrimination in Private Civil Litigation: A
Critical Analysis,* 39 BROOK. L. REV. 121 (1972). This case impli-
cates two important policy considerations in direct conflict: equita-
ble distribution of marital assets in a divorce proceeding and
preservation of the privilege against self-incrimination. A careful
balancing must occur between the defendant's privilege and the
plaintiff's right to an equitable division of the marital assets. *Cf.
State v. Lavallee,* 119 N.H. 207, 210, 400 A.2d 480, 482 (1979)
(discussing that trial court must balance defendant's right to
produce all favorable evidence and the witness's privilege);
*Wansong v. Wansong,* 478 N.E.2d 1270, 1272 (Mass.) (discussing
that trier of fact must weigh potential prejudice to other litigants
and potential harm to the party claiming privilege), *cert. denied,* 474
U.S. 1014 (1985).

The plaintiff may take reasonable steps to discover through
alternate means the size and scope of the marital estate. Unless a
statute removes the privilege, *see Wyman v. DeGregory,* 101 N.H.
171, 174, 137 A.2d 512, 515 (1957) (immunity statute), *appeal
dismissed,* 360 U.S. 717 (1959), the defendant need not answer any
questions related to his alleged improper dealings with purported
marital property. The trial court, however, may order the defendant
to execute consent waivers consistent with those permitted in
federal cases for discovery of assets. *See Doe v. United States,* 487
U.S. 201, 215-16 (1988); *cf. Cormier,* 127 N.H. 253, 256, 499 A.2d 986,
988 (1985) (privilege against self-incrimination "applies only to
evidence provided by a defendant that is of testimonial character").
Upon the appropriate showing by the plaintiff, *see* SUPER. CT. R.
35(c)(2); *Robbins v. Kalwall Corp.,* 120 N.H. 451, 453, 417 A.2d 4, 5
(1980), the court may also order any entities the defendant has
allegedly utilized to hide assets to produce appropriate records. *See
State v. N.H. Retail Grocers Ass'n,* 115 N.H. 623, 626, 348 A.2d 360,
363 (1975).

Moreover, upon the completion of the plaintiff's discovery efforts,
the trial court may fashion an equitable distribution based on all
information then available and all reasonable inferences to be drawn
therefrom. The court may also enter a decree for division of
property subject to modification if additional assets are disclosed or
discovered. *Calderwood v. Calderwood,* 114 N.H. 651, 654, 327 A.2d
704, 706 (1974), *appeal after remand,* 115 N.H. 550, 345 A.2d 166
(1975); *United States v. Mammoth Oil Co.,* 14 F.2d 705, 729 (8th Cir.
1926) ("a court of equity has the right to draw reasonable and

proper inferences from all the circumstances in the case, and especially from the silence of [the defendant]"), *affirmed*, 275 U.S. 13 (1927). Having asserted his privilege, "[the defendant] cannot be heard to argue that the disposition was unequal when [the defendant] has effectively prevented the trial court . . . from being able to determine whether the disposition was in fact equal or not. The only one who knows is [the defendant], and he is not talking." *Ross v. Ross*, 638 N.E.2d 1301, 1306 (Ind. Ct. App. 1994).

*Reversed and remanded.*

BRODERICK, J. did not sit; the others concurred.