Original
No. 83-472

SEAN D. SHEEDY

v.

MERRIMACK COUNTY SUPERIOR COURT AND
MERRIMACK COUNTY SHERIFF'S DEPARTMENT

May 9, 1986

*Wiggin & Nourie*, of Manchester (*Edward L. Cross* on the brief and orally), for the petitioner.

*Stephen E. Merrill*, attorney general (*Robert B. Muh*, assistant attorney general, on the brief and orally), for the respondents.

*New Hampshire Legal Assistance*, of Concord (*Michael A. Fuerst* on the brief), and the *Family & Housing Law Clinic* of the Franklin Pierce Law Center, of Concord, by brief for Cheryl Bolduc, Teal Grammo, and the Family & Housing Law Clinic, as *amici curiae.*

KING, C.J. In November 1983 the Superior Court (*Goode*, J.) found the petitioner, Sean Sheedy, in civil contempt and ordered him incarcerated in the Merrimack County House of Correction. In

his petition for a writ of habeas corpus filed in this court, the petitioner alleges that procedural errors at his contempt and show cause hearings violated the provisions of RSA 524:6-a (Supp. 1985) and denied him due process of law. We vacate the order of the trial court and remand the case for proceedings consistent with this opinion.

In June 1982, ICOM America, Inc. (ICOM) sued Sheedy, alleging that it had delivered equipment to him for which he had never paid. In May 1983, ICOM and Sheedy entered into a stipulation for docket markings, by the terms of which a judgment of $14,829.07 was entered for ICOM. Under the stipulation, Sheedy was given the opportunity of discharging this debt by making two payments of $5000 each. Sheedy failed to make either of these payments, and in October, 1983, ICOM filed a petition for contempt and a petition for enforcement of judgment under RSA chapter 524.

At a contempt hearing held on November 7, 1983, the trial court heard evidence regarding Sheedy's ability to pay the stipulated judgment against him. Sheedy, claiming to be an indigent, moved to have an attorney appointed to represent him during the proceeding. The trial court denied the motion. Sheedy informed the court that he would be willing to submit to an investigation by the New Hampshire Probation Department regarding his assets, his liabilities, and his employment status. The court did not order such an investigation. Near the close of the hearing, the trial court addressed Sheedy as follows:

> "I do not find your protestations of inability to secure employment . . . to be credible. I further find that you have failed to establish that you are unable to pay though you have established that you are unwilling to pay. Under the circumstances, I find you to be in civil contempt and further order that you appear before this court [next week] to show cause, if any there be, why a mittimus for your confinement to the Merrimack County House of Correction should not issue, there to be held until you either pay or until you make some agreement which you will abide by to effect such payment."

At the November 15, 1983, show cause hearing, Sheedy reported to the court that he had secured employment which would last at least through the Christmas season with a department store. Sheedy related that he would earn a gross salary of approximately $160 per week, and he offered to begin paying $20 per week toward the $14,829.07 judgment against him. The court found that Sheedy had failed to show cause why a mittimus should not issue, and ordered him confined. The court gave the petitioner until November

21, 1983, to file a petition for a writ of habeas corpus, present a "credible payment schedule," or enter into confinement. When Sheedy asked the trial court to "please set me up a payment schedule," the court replied, "This Court has said everything it intends to today."

As a preliminary matter, we consider the State's contention that Sheedy was found in contempt and was ordered incarcerated not for his failure to comply with the court's order issued pursuant to RSA 524:6-a, but rather because he failed to honor the stipulation he entered into with ICOM. We disagree with the State, and hold that the civil contempt proceedings against the petitioner were conducted under the aegis of RSA 524:6-a. The act of contempt in these circumstances is the violation of the court's order pursuant to that statute, not the breach of the stipulation. *See Vermont Nat'l Bank v. Taylor*, 122 N.H. 442, 445 A.2d 1122 (1982).

The petitioner's first argument on appeal is that RSA 524:6-a is unconstitutionally vague. In 1983, RSA 524:6-a provided that:

"Whenever judgment is rendered against any person in this state, the court wherein said judgment is rendered shall either at the time of rendition of the judgment inquire of the defendant as to his ability to pay the judgment in full or upon petition of the plaintiff after judgment order the defendant to appear in court for such inquiry and, at either time, order the defendant to make such weekly payments as the court in its discretion deems appropriate. Failure to make such weekly payments shall constitute civil contempt of court. The court may order probation officers to make an investigation and recommendation as to the defendant's ability to pay said judgment. Said judgment may be enforced against any property of any kind of the debtor, except such property as is now exempt from attachment or execution."

Amendments made to the statute in 1985 do not affect this case. Sheedy faults the statute for not setting forth the factors a court should consider when it determines a defendant's "ability to pay" or when it decides what is an "appropriate" payment.

A statute or government regulation is void for vagueness when it either forbids or requires "the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926).

We hold that, when read as a whole, RSA 524:6-a is not unconstitutionally vague. In determining whether a defendant has

the "ability to pay" and in fixing an "appropriate" payment, a trial judge is constrained by the fact that the judgment being enforced cannot be satisfied by property which is exempt from attachment or execution. In other words, a judge, in determining a defendant's "ability to pay" a judgment, may not consider property "exempt from attachment or execution" under RSA chapter 511, which governs attachments, or RSA chapter 512, which governs trustee process. *See* RSA 511:2; RSA 512:21. The legislature's intent in passing RSA 524:6-a was to give judgment creditors a new *method* of obtaining payment (periodic rather than lump-sum payments), not a new *source* of payment. The purpose of an inquiry pursuant to RSA 524:6-a is not to deny a debtor the property and income needed to sustain life or the ability to earn income in the future, but rather to determine whether a debtor has property or income not needed for the necessities of life from which a judgment may be paid. *Cf. Placey v. Caron*, 122 N.H. 597, 448 A.2d 388 (1982) (tenant's welfare benefits can be used to satisfy landlord's judgment against tenant for back rent despite statutory provision making public assistance non-assignable).

The petitioner's next argument is that the trial court's refusal to set a repayment schedule for him violated RSA 524:6-a and denied him due process of law. We agree with the petitioner that the court violated the statute in failing to set a schedule; and, since we reverse on this ground, we need not consider the petitioner's due process argument.

█ The statutory language is quite plain when it instructs courts to "order the defendant to make such weekly payments as the court in its discretion deems appropriate." RSA 524:6-a. If a court, in its discretion, orders a defendant to make payments and he fails to do so, he is then in civil contempt. RSA 524:6-a. A defendant cannot be in contempt for failing to make a court-ordered payment when the court has not instructed the defendant as to what payment to make. Upon remand, if the trial court finds that Sheedy has the ability to pay, it should set a repayment schedule and give him the opportunity to meet it before it finds him in contempt.

█ We also find merit in the petitioner's contention that the trial court erred in declining to order a probation department investigation. RSA 524:6-a states that, "The court may order probation officers to make an investigation and recommendation as to the defendant's ability to pay said judgment." It is true, as the State contends, that this language is permissive rather than mandatory. Thus, it is within the sound discretion of the trial court to decide whether to

order an investigation. We hold that, on the facts of this case, the trial court abused its discretion in failing to order a probation department investigation, because the petitioner appeared *pro se*, conflicting evidence was introduced regarding his ability to pay, and he specifically requested a probation department probe.

Having reversed on these grounds, we need not consider petitioner's claim that the trial court clearly erred when it determined he was able to pay, or his contention that it was clear error to order his incarceration when he had found employment.

■ The petitioner's final argument on appeal is that the trial court violated his right to due process of law under the fourteenth amendment to the United States Constitution when it declined to appoint counsel for him. Sheedy also asserts that he is entitled to appointed counsel upon remand. We disagree with both of these contentions.

■ In *Duval v. Duval*, 114 N.H. 422, 322 A.2d 1 (1974), we held that it is within the discretion of the trial court whether to appoint counsel for an indigent defendant in a civil contempt proceeding. We noted that due process requires appointment of counsel in a civil case when there is a danger that the defendant will not be treated fairly unless he is provided with assistance of counsel. We also noted that such a danger often exists when the issues involved in the proceeding are complex or when the defendant is incapable of speaking for himself. *Id.* at 426, 322 A.2d at 3–4. The petitioner has failed to convince us that the issues in this contempt proceeding are sufficiently complex or that he is so incapable of speaking for himself that the trial court abused its discretion in refusing to appoint counsel, or that the Federal Constitution requires that he be provided with appointed counsel on remand.

We also are not convinced by petitioner's argument that the United States Supreme Court, in *Lassiter v. Department of Social Services*, 452 U.S. 18 (1981), created a presumption that an indigent litigant is entitled to appointed counsel whenever he is subject to incarceration. The Court's discussion of such a presumption was not the holding of *Lassiter*, but merely *obiter dictum. Id.* at 26–27.

■ Even if *Lassiter* creates a presumption in favor of appointed counsel for indigent litigants who face the possibility of deprivation of physical liberty, such a presumption is rebutted in this case due to the nature of the incarceration with which the petitioner Sheedy is threatened. Sheedy will be imprisoned only if he is in contempt. He will be in contempt only if he fails to make a court-ordered payment. Finally, he will be ordered to make payments only if the court

finds that he has the "ability to pay." In such a situation, it can fairly be said that Sheedy, if incarcerated, will hold the keys to his own prison. *See Bonser v. Courtney*, 124 N.H. 796, 808, 481 A.2d 524, 530–31 (1984).

*Order vacated; case remanded.*

SOUTER, J., did not sit; the others concurred.