Rockingham
Nos. 2000-414
2000-563

AMERICAN EXPRESS TRAVEL

v.

DAVID MOSKOFF

Argued: July 11, 2002
Opinion Issued: October 25, 2002

*Barry I. Harkaway,* of Nashua, by brief and orally, for the plaintiff.

*Daphne Fotiades,* of Newmarket, appearing pursuant to Supreme Court Rule 33, by brief, for the defendant.

BROCK, C.J. The defendant, David Moskoff, appeals from Superior Court (*McHugh,* J.) orders: (1) finding that he has the ability to pay $5,000 per month towards an outstanding debt and ordering him held until he paid $5,000 cash; and (2) clarifying that the $5,000 paid to secure his release was not bail, but was properly turned over to the plaintiff and applied towards its judgment. We affirm.

In April 1997, the plaintiff, American Express Travel, filed suit against the defendant claiming credit card debt in the amount of $96,777.89, plus attorney's fees. In October 1999, the trial court granted the plaintiff's motion for summary judgment, awarded the plaintiff a judgment in the principal sum of $93,970, and ordered a hearing on the issue of whether and in what amount the plaintiff was due additional funds for any interest and attorney's fees. On January 7, 2000, an agreement was signed by the plaintiff and the defendant granting the plaintiff judgment in the amount of $118,000.

The same day, the plaintiff served interrogatories upon the defendant designed to determine his ability to pay the debt. On January 10, 2000, the plaintiff filed a motion for periodic payments, *see* RSA 524:6-a (1997 & Supp. 2002), stating that it had made a demand for payment and that the defendant had not agreed to a payment schedule. When the defendant did not respond to the interrogatories by May 2000, the plaintiff filed a motion to compel. Prior to the court's ruling on the motion to compel, the defendant responded to the interrogatories, but declined to answer a number of them, asserting that they were irrelevant or privileged. While the defendant purported to answer a number of the other interrogatories, the answers did little to illuminate the defendant's financial situation other

than to state that he pays $4,440.00 per month toward his mortgage and real estate taxes.

At a hearing on the motion for periodic payments held on June 2, the court granted the defendant's attorney's motion to withdraw, and the defendant represented himself. During the hearing, the defendant confirmed that he and his wife pay over $4,000 per month toward their mortgage and property taxes, and that their payments are up to date. However, he refused to answer the court's questions regarding his ability to pay the debt and his earnings for calendar year 1999. He requested a continuance so that he could retain a new attorney to assist him in answering the questions, and stated that he did not know what he earned in 1999 because his wife "keeps all those books." At the conclusion of the hearing the court stated:

> You know in light of the large amount of this debt and in light of the probable history of this case and the inability, or not inability, I should say the unwillingness to make any reasonable payments, reasonable offers and reasonable discovery requests being ignored, I think the plaintiff's recommendation at this point is reasonable. I order you held until you pay $5,000 cash
> . . . .

When the defendant stated, "When you say held I am asking you for some time for representation," the court responded, "The answer is no. Okay. You want to get a lawyer when you get out, you can. But right now you don't get out until you pay $5,000." Thereafter, the defendant was taken into custody by the sheriff.

Following the hearing, the trial court issued a written order. The court reiterated that based upon the financial information available to the court, the defendant has the ability to pay $5,000 per month toward the debt. The court also ordered the defendant to make the first payment immediately and be held until he had done so, and that he provide all financial information requested by the plaintiff's counsel within thirty days. Finally, the court stated that once the plaintiff had an opportunity to review the defendant's financial information, another hearing would be held to determine whether or not the $5,000 per month payment should be increased or decreased.

Pursuant to the court's oral and written orders, the defendant was held for several hours until his wife, Daphne Fotiades, arrived at the Brentwood County jail and paid $5,000. Upon receipt of the money, a bond in a criminal case was executed, and the clerk paid $5,000 to the plaintiff in

accordance with the order of the court. The defendant was released, and shortly thereafter, filed an appeal with this court.

Following the filing of the appeal, Daphne Fotiades accompanied her mother, Joan Fotiades, to the Rockingham County Superior Court to demand the return of the $5,000. They alleged that the $5,000 belonged to Joan Fotiades, and was paid to secure the release of her son-in-law, who had been "falsely imprisoned." The clerk informed them that he would look into the matter. A few weeks later, Daphne Fotiades wrote a letter to the deputy clerk of the Rockingham County Superior Court, claiming that the money that had been accepted by the court was a cash criminal bond that was illegally taken and spent by the clerk's office without her consent. The deputy clerk responded by letter, informing Daphne Fotiades that he had reviewed the file and concluded that the money could not be returned, as the payment was made toward the payment of a debt, and not as a cash criminal bond. Shortly thereafter, on August 3, 2000, the court issued an order noting that an issue had arisen as to whether the $5,000 posted on June 2 was for bail or as a payment toward the debt, and concluding that "[i]t was the intent of this Court that the $5,000 payment ordered in its Order of June 2, 2000 was not bail, but when paid was to be turned over to the plaintiff and applied towards its judgment."

Thereafter, Daphne Fotiades wrote to the clerk of court, asserting that the order of August 3, 2000, was a fraudulent document. She alleged that the court had "illegally usurped the New Hampshire Supreme Court's power to decide the pending issues on appeal," and that Judge McHugh should have been disqualified from any further involvement in the case because he had "special and significant interests in the outcome [of the case]." Her position seemed to be that Judge McHugh issued the order in an effort to insulate himself from being sanctioned for his decision to order that the defendant pay $5,000 on the debt and be held until he did so. The clerk responded by letter, stating:

> Following your mother's request, I personally reviewed the case file ... and based on Judge McHugh's June 2nd Order determined that the actions taken by the clerk's office were proper with regard to the $5,000 and the forthwith payment ordered. However, because your mother's letter raised the issue that the $5,000 had been paid as bail and should be returned to her, and to determine if the actions taken by the clerk's office were in fact correct, I referred this issue to Judge McHugh. Judge McHugh's Order of 8/3/00 is the result of my request.

> I recognize that you do not agree with Judge McHugh's Orders or the actions taken by the clerk's office. However, as all of these issues have now been appealed to the New Hampshire Supreme Court, pending a ruling by that Court I do not feel at this time that I am authorized to take any further action.

Following further correspondence with the superior court, the defendant appealed on the grounds that the judge and the clerk, "allegedly colluded to produce a document which purports to be an order of Rockingham County Superior Court dated August 3, 2000, but is in fact and law a counterfeited, forged document under color of law." We accepted the appeal and consolidated it with the appeal from the June 2, 2000 order.

### I. The June 2, 2000 Order

We consider first the defendant's argument that the trial court erred when, pursuant to RSA 524:6-a, it ordered him to pay $5,000 per month and that he be held until he made the first payment. We review the trial court's order under an unsustainable exercise of discretion standard. *See* RSA 524:6-a; *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). RSA 524:6-a provides:

> Whenever judgment is rendered against any person in this state, the court in which the judgment is rendered shall either at the time of rendition of the judgment inquire of the defendant as to the defendant's ability to pay the judgment in full or, upon petition of the plaintiff after judgment, order the defendant to appear in court for such inquiry. The court may at either time order the defendant to make such periodic payments as the court in its discretion deems appropriate. If the court orders the defendant to make periodic payments at the time of rendition of judgment, the order shall not provide for payments to begin until after the appeal period has expired. Failure to make such periodic payments shall constitute civil contempt of court. The court may order the appropriate agencies to make an investigation and recommendation as to the defendant's ability to pay the judgment. The judgment may be enforced against any property of any kind of the debtor, except such property as is now exempt from attachment or execution.

The plaintiff submitted interrogatories to the defendant on January 7, 2000. The defendant did not answer the interrogatories until May, after

the plaintiff had filed a motion to compel. When the defendant finally did respond to the interrogatories, he refused to provide much of the requested information on the basis that the requests violated his privacy rights and that the information was privileged. He did complete a financial affidavit, however, stating that he was paying $4,440 per month for his house mortgage payment and real estate taxes.

At the hearing on the motion, the defendant stated again that he was paying over $4,000 per month for his house mortgage payment and real estate taxes. However, he refused to provide basic information to the court regarding his expenses and income. For example, he refused to tell the court how much he believed he could pay towards the debt, and claimed that he was unable to disclose his income for calendar year 1999. Under these circumstances, where the evidence suggests that the defendant was employing dilatory tactics and was demonstrably less than candid with the court (the defendant having refused to provide both the plaintiff and the court with discovery that would enable the court to determine the defendant's ability to pay), the court's order requiring the defendant to pay $5,000 per month was not unreasonable. We agree with the plaintiff that the defendant cannot be evasive and uncooperative in providing information to the court, and then complain that the order for payment was unreasonable. *Cf. DeMauro v. DeMauro*, 142 N.H. 879, 889 (1998). Furthermore, the court's written order which provided that another hearing would be held to determine whether the $5,000 per month should be modified after the defendant provided the plaintiff with appropriate financial information, mitigates any allegedly harsh effect of the order.

To the extent that he so argues, we disagree with the defendant that the court erred when it refused to grant the defendant a continuance so that he could obtain new counsel. In *Sheedy v. Merrimack County Superior Court*, 128 N.H. 51, 56 (1986), we held that under the facts of that case, the court was not required to appoint counsel for a defendant subject to a civil contempt proceeding pursuant to RSA 524:6-a. In doing so, we noted that "due process requires appointment of counsel in a civil case when there is a danger that the defendant will not be treated fairly unless he is provided with assistance of counsel. . . . [S]uch a danger often exists when the issues involved in the proceeding are complex or when the defendant is incapable of speaking for himself." *Id.* Although the issue in this case is not whether the court was obligated to appoint counsel, but whether the court should have granted a continuance for the defendant to obtain new counsel, the reasoning of *Sheedy* applies with equal force.

As in *Sheedy*, the issues involved in the proceeding were not so complex that the defendant was incapable of speaking for himself, and the trial court's decision to deny a continuance did not constitute an unsustainable exercise of discretion or deny the defendant due process. The defendant had six months to prepare for the hearing, had the benefit of counsel during this six-month period, was on notice that the subject of the hearing would be his ability to pay the judgment, and assented to his counsel's motion to withdraw at the hearing. Under these circumstances, where the trial court could have concluded that the request for a continuance was simply another effort by the defendant to delay the proceedings, it was not unreasonable for the trial court to deny it.

We also disagree with the defendant that the trial court erred when it ordered the defendant held until he made the first $5,000 payment. RSA 524:6-a authorizes the superior court to order the defendant to make "such periodic payments as the court in its discretion deems appropriate," and specifically provides that "[f]ailure to make such periodic payments shall constitute civil contempt of court." In the present case, the court ordered the defendant to pay $5,000 immediately. When the defendant failed to do so, the court concluded that the defendant was in contempt and ordered him committed to custody until he made the prescribed payment. In doing so, the trial court was acting within its statutory authority. *Cf. Mason Furniture Corp. v. George*, 116 N.H. 451, 452-53 (1976) (defendant may be held in civil contempt for failure to pay installment under existing order); *Sheedy*, 128 N.H. at 55 (defendant cannot be held in civil contempt for failing to make court-ordered payment when court has not instructed defendant as to what payment to make).

*II. The August 3, 2000 Order*

We disagree with the defendant's argument that the August 3, 2000 order was improper. It is clear from the record that the August 3 order was issued to clarify the June 2, 2000 oral and written orders. It was prompted by Daphne Fotiades' demands that the court return the $5,000. The order explained that the money could not be returned because, pursuant to the court's prior order, the money was not bail, and, when turned over, it would be applied toward the judgment. The defendant's assertion that the order was designed to "fix" the case, and somehow usurp the authority of this court to decide the issues in this case, is completely without merit and warrants no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

Any arguments the defendant raised in his notice of appeal but did not brief are deemed waived. *State v. Mountjoy*, 142 N.H. 648, 652 (1998).

Based upon the record before us, we conclude that this appeal is frivolous and intended to further delay recovery of the judgment. We therefore order the defendant to pay the plaintiff attorney's fees related to this appeal. *See* SUP. CT. R. 23. The plaintiff shall file an itemized statement of its attorney's fees within thirty days of the issuance of this opinion.

*Affirmed.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.