# United States Court of Appeals

## For the First Circuit

No. 03-2310

RICHARD ALLISON,

Petitioner, Appellant,

v.

EDWARD FICCO, Superintendent and THOMAS F. REILLY,
Attorney General of Massachusetts,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Court]

Before

Lynch, Circuit Judge,
Cyr, Senior Circuit Judge,
Howard, Circuit Judge.

James W. Rosseel for appellant.
David M. Lieber, Assistant Attorney General, with whom Thomas
F. Reilly, Attorney General, was on brief, for appellees.

November 5, 2004

**LYNCH**, <u>Circuit Judge</u>.  Richard Allison was convicted in state court of murder in the first degree on a theory of extreme atrocity or cruelty.  He was also convicted of armed robbery and perjury.  The murder victim, Thomas Moran, was a friend, whom Allison and two others shot in the face, stabbed seventy-nine times, and left lying in a school baseball field.  <u>Massachusetts</u> v. <u>Allison</u>, 751 N.E.2d 868, 877-78 (Mass. 2001).  The motive seems to have been their intoxicated irritation with stupid comments the victim had made, critical of them.  The evidence at trial was strong, a state jury convicted all three defendants, and Allison was sentenced to mandatory life imprisonment.

Allison moved for state post-conviction relief, arguing his trial lawyer, Thomas Amoroso, had not provided effective assistance of counsel because he had conflicting interests and that the evidence was insufficient to establish a joint venture in the murder.  Both these claims are now raised before us.

We turn first to the ineffective assistance of counsel claim.  The supposed conflict came from two factors.  First, Amoroso had a separate practice but shared office space with the lawyers for Allison's two co-defendants, Sullivan and Hardy, men whose interests were at cross purposes with Allison's, as each pointed the finger at the others.  Second, Amoroso's $30,000 fee was to be paid from the proceeds of an assignment of a personal injury claim of the sister of co-defendant Hardy.

The same state judge who presided over the trial heard the claim that Amoroso did not, because of these purported conflicts, provide effective assistance of counsel. The judge heard witnesses over several days of hearings and issued a thoughtful and thorough opinion. The court first heard evidence on whether there was an actual conflict of interest; if that were proven, it said it would grant a new trial without a showing of prejudice in adherence to a Massachusetts state law rule. If there was no actual conflict but only a potential conflict, then the court would hear, as it did, the issue of whether there was ineffective assistance of counsel.

The trial judge concluded that as a matter of fact and law there was no actual conflict and that the defendant had failed to show adverse effects from any potential conflict. As to the potential conflict, the judge specifically found:

> Even assuming a potential conflict of interest, Allison has failed to meet his burden of demonstrating that such a conflict materially prejudiced his defense. There is nothing in the record to suggest that Amoroso had divided loyalties either as a result of the office sharing arrangement or as a result of the fee agreement. Nor is there evidence that he was influenced to either act or refrain from acting in any way because of his association with either [of the lawyers for the co-defendants]. To the extent that Allison complains of strategic deficiencies at trial by counsel, he has not demonstrated that they were motivated by a desire to benefit co-defendants Hardy and Sullivan. Accordingly, this Court concludes that Allison was not denied effective assistance of trial counsel due to a potential conflict of interest which prejudiced his defense, and is not entitled to a new trial on that basis.

-3-

The Massachusetts Supreme Judicial Court (S.J.C.) affirmed this determination.  Allison, 751 N.E.2d at 893-94.

Allison then turned to federal court, filing a habeas corpus petition under 28 U.S.C. § 2254, alleging the state conviction violated his federal constitutional rights under the Sixth Amendment right to counsel.[1]  The federal district court rejected the habeas petition as unfounded.  Allison v. Ficco, 284 F.Supp.2d 182, 191 (D. Mass. 2003).  So do we.

Because the state courts squarely addressed the federal constitutional issue we engage in deferential, and not de novo, review.  Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001).  When a claim is adjudicated on the merits in state court proceedings, the petitioner must show that the decision of the state courts was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . that [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[s]."  28 U.S.C. § 2254(d)(1),(2).  Allison can do neither.

The habeas petition is based on a misapprehension of what the Supreme Court has decided in the area of putative conflicts of

---

[1]Allison raised two other grounds in his habeas petition before the district court.  One is not before us, and the other, the sufficiency of the evidence for joint venture murder, is discussed below.

-4-

interest of criminal defense counsel. Allison works backwards from the language in Cuyler v. Sullivan, 446 U.S. 335, 348 (1980), and Mickens v. Taylor, 535 U.S. 162, 171 (2002), and argues that if there is any effect at all on counsel's performance, then there is an actual conflict of interest and he need not show prejudice in the sense of Strickland v. Washington, 466 U.S. 668, 694 (1984). There are two problems: this is not an accurate statement of law, and even if it were, the state court found there was no such adverse effect.

The general rule for showing ineffective assistance of counsel under Strickland requires a showing of prejudice to make out a claim of ineffective assistance. See Strickland, 466 U.S. at 694 (requiring a defendant alleging ineffective assistance of counsel to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

In Mickens, the Supreme Court addressed under what circumstances a trial judge's failure at the time of trial to inquire into defense counsel's conflict of interest requires reversal without the usual showing that the conflict prejudiced the defense. Mickens, 535 U.S. at 166-67. The Mickens inquiry concerned exceptions to the general rule of showing prejudice. One exception is the situation found in Holloway v. Arkansas, 435 U.S. 475 (1978), where counsel objects but is forced to jointly

-5-

represent two defendants with conflicting interests at trial without any inquiry from the district court. The Court held that the defendant need not show that his counsel actively represented those conflicting interests, nor that the conflict detrimentally affected his counsel's representation of him or resulted in prejudice. Id. at 490-91.

In Sullivan, however, where defendant had not objected to the joint representation of co-defendants with conflicting interests, the Court forged a standard that falls midway between Strickland and Holloway. Once the defendant proves that "an actual conflict of interest adversely affected" his attorney's representation of him, prejudice will be presumed. Sullivan, 446 U.S. at 348. Allison has failed to make the required threshold showing. Indeed, Burger v. Kemp, 483 U.S. 776 (1987), made it clear that an actual conflict of interest will not be inferred merely from law partners' representation of co-defendants with antagonistic defenses, even where the partners discussed each other's cases, shared common research, or otherwise collaborated to an extent short of sharing their clients' confidences. Here, the S.J.C. reasonably found, as a matter of fact, that the Amoroso office-sharing arrangement was even less conducive to actual conflict than the Burger law firm. Hence it follows that the S.J.C.'s decision is neither contrary to nor an unreasonable application of established Supreme Court precedent.

-6-

We go a bit further. We see no prejudice or adverse effects that Allison has suffered from the potential conflict. He seems to suggest the evidence could be read to conclude that the lawyer's supposed conflict led to bad advice to Allison not to testify, and/or the conflicts somehow affected counsel's advice to Allison on whether to plead guilty. There is not a shred of evidence to support either contention and the record reads to the contrary. Allison had very good reason not to take the stand. He had been indicted for perjury before the grand jury. As a result, if he had testified, whatever he said might well have landed him in trouble. Allison also posits some prejudice from the fact that he was visited by an investigator for a co-defendant and asked whether he was cooperating with the government. Allison then informed his lawyer of the conversation and asked him to tell defense counsel that he was not cooperating. We see no prejudice, and this evidence undercuts the notion that his lawyer's purported conflict caused him not to cooperate.

In a habeas corpus proceeding in which the petitioner is "in custody pursuant to the judgement of a [s]tate court, a determination of a factual issue made by a [s]tate court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The defendant "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 598 (1st Cir. 2001). Allison does not seriously attempt

an argument that the state court's factual findings concerning the alleged adverse effects are wrong. There being neither an actual conflict nor any adverse effects from a potential conflict, the decision of the S.J.C. to deny relief to petitioner is hardly unreasonable.

Petitioner's second claim, based on the insufficiency of evidence to establish a joint venture, also fails. Allison argues that the S.J.C.'s finding of sufficient evidence to convict petitioner of murder in the course of a joint venture was an unreasonable application of clearly established federal law which requires proof beyond a reasonable doubt of each element of a crime. See Jackson v. Virginia, 443 U.S. 307, 313-14 (1979). He contends that evidence presented at trial conclusively established that it was impossible for Hardy, Sullivan, and him to make a prior agreement to murder the victim and it was unreasonable for the S.J.C. to ignore this evidence in determining that a rational juror could find beyond a reasonable doubt the existence of a joint venture.

The S.J.C. noted that a joint venture may be found if there is evidence from which a rational juror could have concluded beyond a reasonable doubt that the defendant was

> (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary.

Massachusetts v. Allison, 751 N.E.2d 868, 878-79 (Mass. 2001) (quoting Commonwealth v. Bianco, 446 N.E.2d 1041 (Mass. 1983)(internal quotations omitted)). Viewing the evidence in the light most favorable to the Commonwealth and relying on the testimony of one witness, the S.J.C. found that "[a] rational juror could have concluded that the defendant" and two of his co-defendants "discussed a plan to kill Moran." Id. at 879.

The S.J.C. further noted, "[i]n any event, an anticipatory compact is not necessary for joint venture liability, as long as 'at the climactic moments the parties consciously acted together in carrying out the criminal endeavor.'" Id. (quoting Commonwealth v. Fidler, 503 N.E.2d 1302, 1307 (Mass. App. Ct. 1987)). The S.J.C. held that the eyewitness testimony that Allison and his co-defendants were "crouched over the victim making stabbing gestures is sufficient to establish the defendant's liability for the murder both individually and as joint venturer." Id. at 879.

Allison does not argue that the S.J.C. made an error of law when it stated the elements of a joint venture and determined that an anticipatory compact is not necessary to find joint venture. The S.J.C.'s determination, based upon the eyewitness's testimony that Allison along with the others crouched over the victim and made stabbing motions, is more than reasonable and sufficient to establish a joint venture on its own.

The denial of the petition for habeas corpus is **<u>affirmed</u>**.