Dereritt v. Warden, NHSP                 CV-03-535-JD  12/23/04

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Robert Demeritt

     v.                                    Civil No. 03-535-JD
                                       Opinion No. 2004 DNH 186
Warden, New Hampshire
State Prison


O R D E R


    Robert Demeritt seeks habeas corpus relief, pursuant to 28

U.S.C. § 2254, from his conviction on charges of negligent

homicide and reckless conduct and his confinement on consecutive

sentences of three-and-one-half to seven years.[1]  The charges

against Demeritt arose from an automobile collision that resulted

in the death of the driver of the other car involved.  Following

preliminary review, twelve of Demeritt's thirteen claims were

approved for service on the Warden.  Both the Warden and Demeritt

move for summary judgment.[2]

---

    [1]The court notes that although Robert Demeritt signs his
last name as "DeMeritt," he uses both "Demeritt" and "DeMeritt"
in his court filings.  The state court used "Demeritt."  To avoid
confusion, this court will also use "Demeritt."

    [2]The Warden failed to file a response to Demeritt's motion.

## Discussion

The Warden contends that six of the issues raised by Demeritt have been procedurally defaulted. Demeritt agrees that two of the issues, whether the trial judge's failure to recuse herself and whether the presentence investigation report deprived him of due process, were procedurally defaulted. The court addresses the remaining claims as follows.

### A. Procedural Default

The procedural default doctrine is a corollary of the exhaustion requirement, both of which arise from "the general principle that federal courts will not disturb state court judgments based on adequate and independent state law." Dretke v. Haley, 124 S. Ct. 1847, 1852 (2004). Therefore, "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). A decision based on a state

procedural rule is an independent and adequate state ground for purposes of the procedural default doctrine "so long as the state court consistently applies its . . . rule and has not waived it in the particular case by basing the decision on some other ground." Horton v. Allen, 370 F.3d 75, 80-81 (1st Cir. 2004).

1.  Amendment of indictment and consecutive sentences.

The Warden contends that Demeritt procedurally defaulted his claims that the indictment against him was improperly amended and that the consecutive sentences were improper. The Warden argues that procedural default occurred when the New Hampshire Supreme Court "denied" Demerrit's pro se brief on direct appeal and those issues were not raised in the appeal filed by his counsel.[3] The only indication of the supreme court's decision is a notation in the state court docket that the pro se brief was denied. No reason for the decision is given in the docket, and the decision itself, if a written decision issued, is not part of the record here.

"Generally, a federal habeas court defers to a state court's

_____

[3]Demeritt was represented by counsel who filed a notice of appeal and a brief. Counsel also filed a motion to accept Demeritt's pro se brief. The notation in the court docket is: "Pro se brief denied." No other indication is given as to the court's decision on the issues raised in Demeritt's pro se brief.

3

articulation of a state law ground for a decision." <u>Torres v. Dubois</u>, 174 F.3d 43, 46 (1st Cir. 1999).  On the other hand, if the state court decision appears to be based on federal law or to be interwoven with federal law, the federal court presumes that no independent and adequate state law ground exists for the decision.  <u>Brewer v. Marshall</u>, 199 F.3d 993, 999-1000 (1st Cir. 1997).  When the state court asserts a state law basis for its decision, the federal habeas court must ascertain whether the judgment is based on an independent and adequate state ground. <u>Coleman</u>, 501 U.S. at 736.

Here, because the state supreme court gave no reason for its decision, no state law ground was articulated as the basis for the decision.  Nor is there a lower state court decision that articulates a reason for the decision.  <u>Cf.</u> <u>Gunter v. Mahoney</u>, 291 F.3d 74, 80 (1st Cir. 2002).  The Warden characterizes the supreme court's denial as a refusal to accept Demeritt's pro se brief on procedural grounds either because it was filed pro se or because the claims were not raised in the trial court.  The notation in the docket, however, does not indicate either of those reasons or any other reason.  The New Hampshire Supreme Court reserves its discretion as to whether to allow a defendant to proceed pro se on appeal.  <u>See</u> <u>State v. Thomas</u>, 150 N.H. 327, 332 (2003).  Under these circumstances, where the record lacks

4

any indication that the supreme court's decision was based on an independent and adequate state law ground, the Warden's argument for procedural default is not well-supported.

The Warden also contends that these claims were not exhausted. See, e.g., Asadoorian v. Ficco, 2004 WL 1932753, at *3-*4 (D. Mass. Aug. 23, 2004). Demeritt presented claims pertaining to the indictment and the consecutive sentences in his pro se supplemental brief as part of his direct appeal to the New Hampshire Supreme Court, referencing both the state and federal law bases for the claims. See Baldwin v. Reese, 124 S. Ct. 1347, 1350-51 (2004) (discussing "fair presentation" requirement of exhaustion). The New Hampshire Supreme Court then denied the brief without addressing the claims and without giving reasons for its decision. In the absence of an explanation to the contrary, it appears that the supreme court exercised its discretion not to consider the claims.[4]  Therefore, these claims appear to have been fairly presented to the state courts and, therefore, are exhausted.

---

[4]The Warden also argues that Demeritt failed to raise these claims to the trial court but cites Demeritt's objection to the state's motion to substitute and Demeritt's motion to dismiss, which raise the same issues. The trial court denied Demeritt's motion to dismiss in the margin without explanation. Therefore, it appears that these claims were raised before but rejected by the trial court.

2. Lost evidence.

Demeritt claimed on appeal to the New Hampshire Supreme Court that the state lost or destroyed potentially exculpatory evidence. Demeritt, 148 N.H. at 435. In briefing that issue, however, Demeritt failed to properly identify what evidence was lost or destroyed and instead directed the court to 150 pages of the trial transcript. Id. The court held that "[b]ecause the defendant's brief does not adequately identify the evidence he claims was lost or destroyed, we decline to address the issue." Id.

In this proceeding, the Warden contends that the claim was procedurally defaulted when the supreme court did not address the issue of lost or destroyed evidence on the ground that Demeritt had not properly presented his claim. Neither the supreme court nor the Warden cited case law, a court rule, or a statute to support the court's decision not to address the issue. A review of New Hampshire Supreme Court precedent demonstrates, however, that the court consistently declines to address issues that are not adequately briefed or presented in the record. See, e.g., State v. King, 151 N.H. 59, 64 (2004); State v. Blackmer, 149 N.H. 47, 49 (2003); In re Thayer, 146 N.H. 342, 347 (2001). Because the supreme court declined to address the issue of lost or destroyed evidence due to Demeritt's failure to properly

present the claim, which is a state-law procedural ground consistently applied by the New Hampshire Supreme Court, the claim is procedurally defaulted. Demeritt has not suggested that cause for the default exists or that he suffered actual prejudice, nor has he demonstrated that failure to consider this issue will result in a fundamental miscarriage of justice.

### 3. Excited utterance.

Demeritt challenges the trial court's decision to allow a statement as an excited utterance that was made by an unidentified person at the scene of the accident. On appeal, the New Hampshire Supreme Court ruled that because the defense raised the federal constitutional issue for the first time on appeal and did not raise the issue at trial, it would not address the federal challenge. Demeritt, 148 N.H. at 441-42. "It is a long-standing rule that parties may not have judicial review of matters not raised in the forum of trial." Bean v. Red Oak Prop. Mgmt., Inc., 855 A.2d 564, 565 (N.H. 2004). Therefore, Demeritt procedurally defaulted that claim, and it will not be addressed here.

7

B. Review of the Remaining Claims

The events that led to the charges brought against Demeritt began on the morning of August 17, 1998, in an incident of apparent "road rage." Witnesses traveling in a car on Route 152 in Nottingham, New Hampshire, at about 7:45 a.m. were passed by a Subaru that was traveling at a high rate of speed and was closely followed by a white van. Demeritt, 148 N.H. at 437. Greg Scanlon was driving the Subaru, and Robert Demeritt was driving the van. Id. The witnesses testified that the van appeared to be chasing the Subaru. Id.

Other witnesses testified that the van was traveling in the wrong lane on Route 152, forcing oncoming vehicles off of the road. Id. When Demeritt attempted to steer back into the appropriate lane, he struck the Subaru, causing it to hit a telephone pole and a tree. Id. at 437-38. Scanlon, the single occupant of the Subaru, was killed instantly. Demeritt stopped the van on the other side of Route 152. Id. at 438.

The chief of police in Nottingham arrived within minutes of the accident. Id. Demeritt identified himself as the driver of the van. Id. Someone at the accident scene told the chief that the van pushed the Subaru off of the road. Id. Demeritt told the chief that the Subaru was speeding up when he tried to pass and would then slow down. Id. He said: "'Up here, I bumped it

off the road.'" Id. The chief told Demeritt not to say any more and to stand by his cruiser. When a state trooper arrived at the scene and tried to talk with Demeritt, he refused to talk to him. Id.

Demeritt was indicted on charges of manslaughter and reckless conduct. Id. He was acquitted on the manslaughter charge, but convicted of the lesser-included offense of negligent homicide. Id. He was also convicted of reckless conduct. Id. When the trial judge discovered that juror misconduct had occurred in the course of the trial, she granted Demeritt's motion to vacate the convictions. Demeritt was retried on charges of negligent homicide and reckless conduct and was convicted on both charges. Id. On appeal, the New Hampshire Supreme Court affirmed his convictions.

Demeritt then filed for a writ of habeas corpus in this court. The following claims raised in his petition will be reviewed here:

1. Whether the indictment used in Demeritt's second trial, which was altered to charge negligent homicide and reckless conduct without the charge of negligent homicide having been submitted to a grand jury, was invalid.

2. Whether Demeritt's consecutive sentences on his convictions violate the prohibition against double jeopardy.

9

3.  Whether retrial using the original indictment, which charged manslaughter, violated the prohibition against double jeopardy.

4.  Whether the New Hampshire Supreme Court's decision affirming as harmless error the trial court's decision to allow evidence of Demeritt's silence is either contrary to or an unreasonable application of Chapman v. California, 386 U.S. 18 (1967).

5.  Whether disclosure of Demeritt's prior record violated his right to a fair trial under Chambers v. Mississippi, 410 U.S. 284 (1983), and Spencer v. Texas, 385 U.S. 554 (1967).

6.  Whether the trial court's decision not to admit Greg Scanlon's prior convictions for reckless driving violated Demeritt's right to a fair trial under Crane v. Kentucky, 476 U.S. 683 (1986).

7.  Whether the trial court's refusal to give a jury instruction on the New Hampshire statute prohibiting passing on the right violated due process.

8.  Whether the trial court's decision to exclude Demeritt's female companion from part of the view of the accident scene violated his Sixth Amendment right to a fair trial.

In a case brought pursuant to § 2254, the federal court reviews claims that were adjudicated on the merits by the state

court under a deferential standard.  <u>Allison v. Ficco</u>, 388 F.3d 367, 369 (1st Cir. 2004).  Under that standard, "the petitioner must show that the decision of the state courts was either 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . that [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding[s]'"  <u>Id.</u> (quoting § 2254(d)).  If, on the other hand, the petitioner raised a federal claim in state court that was not adjudicated on the merits, the deferential standard does not apply and, instead, this court reviews the claim de novo.  <u>Horton v. Allen</u>, 370 F.3d 75, 80 (1st Cir. 2004).


1.  <u>De Novo Review</u>

Because the New Hampshire Supreme Court did not address the claims raised in Demeritt's pro se brief, those claims were not adjudicated on the merits.  Therefore, Demeritt's claims that the indictment was invalid and that his consecutive sentences violate double jeopardy are reviewed de novo.

11

a.  Indictment.

Demeritt contends that the indictment used in his second trial was improperly amended because the court clerk marked out "manslaughter" and wrote in "negligent homicide" and marked out "recklessly" and wrote in "negligently."  He argues that charging the lesser included offense of negligent homicide broadened the grounds by which he could be convicted and, therefore, required indictment by a grand jury.  See United States v. Miller, 471 U.S. 130, 138-45 (1985).  He does not claim that he received insufficient notice of the charge on which he was tried and convicted.  Cf., e.g., Hartman v. Lee, 283 F.3d 190, 194 (4th Cir. 2002) (petitioner claimed indictment insufficient because it lacked some elements of the offense charged); Bae v. Peters, 950 F.2d 469, 477-78 (7th Cir. 1991) (discussing difference between Fifth and Fourteenth Amendment requirements).

Although the Fifth Amendment includes a right to have charges presented to a grand jury in certain criminal cases, that right has not been construed to apply to the states through the Fourteenth Amendment.  See Apprendi v. New Jersey, 530 U.S. 466, 477, n.3 (2000); Hurtado v. California, 110 U.S. 516 (1884); LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002); Campiti v. Matesanz, 186 F. Supp. 2d 29, 53 (D. Mass. 2002).  As Demeritt points out, the New Hampshire Constitution also protects a

12

defendant from being convicted of a crime that is not charged in an indictment. See State v. Glanville, 145 N.H. 631, 633 (2002). Federal habeas relief pursuant to § 2254, however, is available only for violations of federal law. § 2254(a); Bae, 950 F.2d at 477. Therefore, Demeritt is not entitled to relief under § 2254 based on his claim that the indictment was invalid because the state failed to have him indicted on the charge of negligent homicide.

### b. Consecutive sentences.

Demeritt was convicted of negligent homicide and reckless conduct. He was sentenced to consecutive sentences of three-and-one-half to seven years. He contends that the consecutive sentencing effectively punished him twice for the same offense, in violation of the constitutional protection against double jeopardy, and was an unconstitutional enhancement of his sentence in violation of the Sixth Amendment under Apprendi v. New Jersey, 530 U.S. 466 (2000).

"The Double Jeopardy Clause guarantees that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" Gonzalez v. Justices of Mun. Court of Boston, 382 F.3d 1, 7 (1st Cir. 2004) (quoting U.S. Const. amend. V). The Fifth Amendment prohibition against double jeopardy applies,

13

through the Fourteenth Amendment, to state prosecutions. Id. Part of the protection is that a defendant may not be sentenced to multiple punishments for the same offense. Id.

Demeritt contends that his consecutive sentences on his convictions of negligent homicide and reckless conduct violate double jeopardy because he is being punished twice for the same act. He argues that the events on the morning of August 17, 1998, when he was speeding after Greg Scanlon on Rt. 152, driving in the wrong lane into oncoming traffic, and then forcing the Subaru off the road, were one transaction which would permit only one punishment. The facts do not support Demeritt's argument.

He was convicted of negligent homicide for forcing Greg Scanlon off the road, which caused Scanlon's death. See RSA 630:1, I. He was convicted of reckless conduct for crossing a double yellow line and driving in the wrong lane on Rt. 152 into oncoming traffic, which forced other drivers off the road. See RSA 631:3, I. Those are two separate offenses, based on different conduct. Therefore, Demeritt was convicted of and sentenced for two separate offenses arising from separate acts, not one transaction as he claims.

Demeritt also argues that because the trial judge decided to impose his sentences consecutively, rather than concurrently, she effectively enhanced his sentence without having a jury determine

14

facts to support the enhancement.  He contends that such an "enhancement" violates Apprendi.

In Apprendi, the Supreme Court held that a "fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.  Other courts have concluded that consecutive sentencing does not violate Apprendi as long as each sentence is not longer than the statutory maximum for that crime.  See e.g., United States v. Noble, 299 F.3d 907, 909-10 (7th Cir. 2002); State v. Higgins, 149 N.H. 290, 303 (2003).  Negligent homicide and reckless conduct are both Class B felonies which, under New Hampshire law, have maximum penalties of seven years.  See RSA 630:3, II; RSA 631:3, II; RSA 651:2, II(b).  Therefore, the maximum statutory penalty for each crime is seven years, and Demeritt was not sentenced to more than the statutory maximum for each crime.  Demeritt's consecutive sentences do not violate the Sixth Amendment restrictions found in Apprendi.

2.  Contrary to or an unreasonable application of federal law.

Demeritt's remaining claims were adjudicated on the merits in state court.  Therefore, those claims are reviewed using the deferential standard under which this court determines whether

15

the state court's decision on each issue was either contrary to or an unreasonable application of federal law.[5]  Allison, 388 F.3d at 369.  "A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"  Mitchell v. Esparza, 124 S. Ct. 7, 15-16 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  "The 'unreasonable application' clause of § 2254(d)(1) applies when the 'state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  Holland v. Jackson, 124 S. Ct. 2736, 2737 (2004) (quoting Williams, 529 U.S. at 413).  Whether the decision is unreasonable is "assessed in light of the record the court had before it."  Id.

---

[5] A habeas application may also be premised on a claim that the decision was based on an unreasonable determination of the facts, but that ground is not at issue here.  Allison, 388 F.3d at 369.

16

a. Double jeopardy.

Demeritt contends that the prohibition against double jeopardy was violated when the prosecution retried him using the same indictment that had been used in his first trial, which charged him with manslaughter. He argues that because he was found guilty of negligent homicide rather than manslaughter, the retrial constituted double jeopardy. The New Hampshire Supreme Court held that both the federal and state constitutions "have long been interpreted to allow a second trial when a defendant procures a reversal of his first conviction." Demeritt, 148 N.H. 446 (citing United States v. Ball, 163 U.S. 662 (1896), and Burks v. United States, 437 U.S. 1, 12-15 (1978)).

First, despite Demeritt's attempts to confuse the issues, he was not retried for manslaughter. He was convicted of negligent homicide and reckless conduct in the first trial, and then successfully moved to vacate the convictions after the trial court discovered juror misconduct. He was retried on charges of negligent homicide and reckless conduct.

Since Demeritt was not retried for manslaughter, the double jeopardy issues he raises did not occur in his case. See Price v. Georgia, 398 U.S. 323, 332 (1970). As the supreme court held, his retrial fell within the jurisprudence of Ball and Burks. See also Sattazahn v. Pennsylvania, 537 U.S. 101, 112-13 (2003).

17

Therefore, the state court's decision was neither contrary to nor an unreasonable application of federal law as determined by the Supreme Court.


### b. Harmless error.

On appeal, Demeritt challenged the trial court's ruling that permitted the prosecution to introduce evidence that he refused to talk to a state trooper at the accident scene. The New Hampshire Supreme Court ruled that the Fourteenth Amendment, as interpreted in Doyle v. Ohio, 426 U.S. 610, 616-20 (1976), applied so that evidence of Demeritt's silence was inadmissible because the police chief told him not to say anything. Demeritt, 148 N.H. at 440. Having found error in the trial court's decision, the supreme court then considered whether the error was harmless.[6] Id.

The supreme court applied the state-law harmless error standard and considered whether the state had shown, beyond a reasonable doubt, that the erroneously admitted evidence did not

---

[6]The court notes that Demeritt was not under arrest nor had he been warned under the requirements of Miranda v. Arizona, 384 U.S. 436, 467-73 (1966), when he refused to talk to the trooper. Instead, the chief of police told Demeritt not to say anything. Therefore, his refusal to talk to the trooper was in the context of the chief's prior instruction, and these circumstances certainly mitigated any error in allowing the evidence.

18

affect the verdict.  Id.  After reviewing the evidence, the supreme court concluded that "[a]longside this abundance of direct evidence demonstrating reckless and negligent driving, the testimony of the defendant's silence introduced by the State was relatively unimportant," and held that the error was harmless beyond a reasonable doubt  Id. at 440-41.

Demeritt contends that the supreme court's harmless error analysis was contrary to and an unreasonable application of the federal harmless error standard in Chapman v. California, 386 U.S. 18 (1967).  The Chapman standard applies on direct appeal to determine whether a preserved constitutional error was harmless. Sanna v. DiPaolo, 265 F.3d 1, 14 (1st Cir. 2001).  On collateral review, however, "a federal habeas court is bound to uphold a state court judgment, notwithstanding trial-type federal constitutional error, so long as that error did not have a 'substantial and injurious effect or influence in determining the jury's verdict.'"[7]  Fryar v. Bissonette, 318 F.3d 339, 342 (1st

_____

[7]A trial error--unlike a structural defect in the prosecution such as total deprivation of the right to trial counsel--occurs during the presentation of evidence to the jury and therefore may be "quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt."  United States v. Downs-Moses, 329 F.3d 253, 267-68 (1st Cir. 2003) (quoting Arizona v. Fulminante, 499 U.S. 279, 308 (1991)).

19

Cir. 2003) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

Assuming that the supreme court was correct that admitting the testimonial evidence of Demeritt's silence was a violation of the Fourteenth Amendment under Doyle, in the context of this case, any such error was harmless. Demeritt was convicted of negligent homicide and reckless conduct. To find him guilty of negligent homicide, the jury had to find, beyond a reasonable doubt, that he negligently caused Greg Scanlon's death by failing to be aware of a substantial and unjustifiable risk that his conduct might cause Scanlon's death. See State v. Liakos, 142 N.H. 726, 730-31 (1998). To find Demeritt guilty of reckless conduct, the jury had to find, beyond a reasonable doubt, that he was aware of and disregarded a substantial and unjustifiable risk that serious bodily injury would result when he crossed the double yellow line and drove on the wrong side of the road into oncoming traffic. See State v. Hull, 149 N.H. 706, 713 (2003).

Demeritt did not dispute that he tried to pass Scanlon by crossing the double yellow line and driving on the wrong side of the road alongside of Scanlon and into oncoming traffic. Demeritt, 148 N.H. at 440. He also did not dispute that he came into contact with Scanlon's car when he tried to move back into that lane. Id. He admitted to the police chief that he "bumped"

20

Scanlon's car off of the road.  Id.  Witnesses testified at trial that Demeritt was traveling at high speed in the wrong lane when the accident happened.  Id.

Nevertheless, Demeritt argues that evidence of his silence undermined his credibility as to his testimony about events leading up to the accident.  He does not explain the significance of those events in light of the evidence of the circumstances of the accident.  The court agrees that given "the abundance of direct evidence demonstrating reckless and negligent driving, the testimony of [Demeritt's] silence introduced by the State was relatively unimportant."  Id.  Therefore, if an error occurred, admission of the evidence of Demeritt's silence "did not have a substantial and injurious effect or influence in determining the jury's verdict."  Fryar, 318 F.3d at 342 (internal quotation marks omitted).

### c.  Admission of Demeritt's prior convictions.

Demeritt was convicted on three charges of felonious sexual assault in 1988.  He was released in 1992 after serving his sentence.  The trial court ruled that the prosecution could introduce evidence of Demeritt's convictions for impeachment purposes but only as felony assaults, omitting any reference to the sexual nature of the crimes.  The New Hampshire Supreme Court

21

held that admission of the convictions was permissible under New Hampshire Rule of Evidence 609(b) and affirmed the trial court's discretionary decision to admit that evidence. Demeritt, 148 N.H. at 442-43.

For purposes of habeas review, Demeritt argues that admission of his prior convictions violated his right to a fair trial. He represents that the convictions were for non-violent statutory sexual assault and, therefore, that the convictions had no probative value because they do not pertain to his credibility or driving. He also contends that their admission was unfairly prejudicial because felony assault suggests violence.

The Supreme Court has held that a defendant who testifies on his own behalf may be impeached by proof of prior convictions without offending due process. Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 287 (1998) (citing Spencer, 385 U.S. at 561)); see also Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983); Leno v. Gaughan, 664 F.2d 314, 315 (1st Cir. 1981). Because the defense asked the trial court to describe the prior offenses as felony assaults rather than felonious sexual assault, Demeritt cannot now claim that the requested designation violated due process. Further, as the supreme court noted, defense counsel brought out the information at trial that the prior convictions did not involve driving. Therefore, the supreme

22

court's decision upholding the trial court's evidentiary ruling is not contrary to federal law.

        d.  Failure to allow evidence of Scanlon's prior convictions.

        At trial, defense counsel sought to introduce evidence, during cross examination of Scanlon's wife, of his prior convictions for reckless driving and disobeying a police officer, two speeding tickets, and his certification as a habitual offender.  The trial court denied the request.  On appeal, the supreme court ruled that the evidence was properly excluded under New Hampshire Rules of Evidence 404(a) and (b).

        Demeritt argues that the trial court's ruling deprived him of a fair opportunity to present a defense.  See Crane v. Kentucky, 476 U.S. 683, 689-91 (1986).  Demeritt's theory was that Scanlon was the aggressor in the events that led to the accident and that his "reckless character" was an essential element of that defense.  The supreme court held, however, that under state law, a victim's aggressive character was not an element of a claim of self defense.  Demeritt, 148 N.H. at 444.  Therefore, since the evidence of Scanlon's prior driving record was not an element of Demeritt's self defense claim, the exclusion of the evidence of Scanlon's record did not deprive him

23

of an opportunity to present his defense.[8]

### e. Failure to give jury instruction.

Demeritt contends that the trial court's failure to give his requested instruction on the New Hampshire statute pertaining to passing on the right, RSA 265:19, violated due process. He argues that the statute was pertinent to his defense that Scanlon caused the accident by overtaking him on the right. The supreme court reviewed the claim under state law without addressing the federal due process issue.

Although criminal defendants have a constitutional right to have a meaningful opportunity to present a complete defense, that right does not require that a defendant's requested instructions be given to the jury. See Gilmore v. Taylor, 508 U.S. 333, 342-43 (1993). Further, as the New Hampshire Supreme Court noted, Demeritt's "own testimony established that the accident occurred when the defendant tried to pass Scanlon on the left. Without evidence that Scanlon attempted to pass [Demeritt] on the right, we do not see any grounds for reading RSA 265:19 to the jury."

---

[8]Further, even if the exclusion of Scanlon's record had been constitutionally erroneous, any error was harmless. Demeritt does not contest that he "bumped" Scanlon's car off the road rather than slowing or otherwise avoiding his car. Therefore, the absence of Scanlon's driving record "did not have a substantial and injurious effect or influence in determining the jury's verdict." Fryar, 318 F.3d at 342.

24

<u>Demeritt</u>, 148 N.H. at 445. As due process would not require the jury instruction Demeritt requested, no due process violation occurred. The supreme court's decision is not contrary to federal law.

### f. Exclusion of female companion.

A friend of Demeritt's attended the jury's view of the accident scene. After the friend did not heed the judge's instructions to stand back and not to let the jury overhear her conversation with Demeritt, the judge told the friend to sit in her car until the view was completed. Demeritt contends that the exclusion of his friend from the second part of the view violated his right to have a public trial. The New Hampshire Supreme Court found no merit in the argument. <u>Id.</u>

Demeritt cites <u>Waller v. Georgia</u>, 467 U.S. 39 (1984), in support of his claim to a right to have the view open to the public. In <u>Waller</u>, the Supreme Court held that a criminal defendant's Sixth Amendment right to a public trial extended to a pretrial suppression hearing. <u>Id.</u> at 47. This court has not found, and Demeritt has not cited, any Supreme Court case applying the same requirement to a view of the scene in the course of a criminal trial.

Demeritt's claim is not the same as the suppression hearing issue decided in <u>Waller</u>, where the court discussed all of the

25

reasons the public trial rule would apply to a suppression hearing. The New Hampshire Supreme Court found that even if the rule in Waller were to apply in the context of a view, the partial exclusion of Demeritt's friend was not tantamount to closing the view to the public. That determination is neither contrary to nor an unreasonable application of Waller. Furthermore, a trial judge has a duty to see that the jury does not overhear comments of bystanders concerning a case. After due warning, the trial judge had the authority to remove Demeritt's friend from the scene to protect the integrity of the jury without violating Demeritt's right to a public trial.

Conclusion

For the foregoing reasons, the warden's motion for summary judgment (document no. 14) is granted. The petitioner's motion for summary judgment (document no. 17) is denied. The petitioner's request for a writ of habeas corpus is denied.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

December 23, 2004
cc: Robert DeMeritt Sr., pro se
    Nicholas P. Cort, Esquire